**RAINES FELDMAN LITTRELL LLP**
Kyra E. Andrassy (State Bar No. 207959)
*kandrassy@raineslaw.com*
Robert S. Marticello (State Bar No. 244256)
*rmarticello@raineslaw.com*
Stephen M. Mott (State Bar No. 362642)
*smott@raineslaw.com*
4675 MacArthur Court, Suite 1550
Newport Beach, CA 92660
Telephone: (310) 440-4100
Facsimile: (310) 691-1943

Counsel for Debtor-in-Possession
Romanov Group, LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>ROMANOV GROUP, LLC,<br><br>Debtor in Possession. | Case No.: 8:26-bk-11948-SC<br><br>Chapter: 11<br><br>**MOTION PURSUANT TO 11 U.S.C. § 364(b) TO ENTER INTO PREMIUM FINANCE AGREEMENT WITH FIRST INSURANCE FUNDING, A DIVISION OF LAKE FOREST BANK & TRUST COMPANY, N.A.; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF DAVID GOODRICH IN SUPPORT THEREOF**<br><br>[Filed concurrently with an Application for Order Shortening Time for Notice]<br><br><u>Hearing Information</u>:<br>DATE: TBD<br>TIME: TBD<br>CTRM: 5C, 411 W. Fourth St., Santa Ana CA 92701 |

**TO THE HONORABLE SCOTT CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED PARTIES:**

Romanov Group, LLC, the debtor and debtor-in-possession (the "**Debtor**"), hereby seeks Court approval under 11 U.S.C. § 364(c)(2) to enter into a premium financing

agreement with FIRST Insurance Funding, a Division of Lake Forest Bank & Trust Company, N.A., to finance the premiums for new property insurance for the real property owned by the Debtor and for liability insurance to protect the Debtor from claims. In support of the Motion, the Debtor submits the following memorandum of points and authorities and the declaration of David Goodrich in support thereof, and respectfully represents as follows:

## I. BASIS FOR EXPEDITED RELIEF

The Debtor's insurance policies are under a group policy that is dependent on non-debtor affiliated entities paying their share of the premiums. The Debtor is informed that there is a default under the existing premium financing agreement as a result of nonpayment by multiple entities, although no notice of cancellation has yet been issued. Although it may not have been issued yet, it is imminent, so the Debtor is seeking relief on an expedited basis to ensure continuous coverage.

## II. BACKGROUND

On June 24, 2026 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned case. The Debtor is operating as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in this case and no official committees have been appointed or designated.

The Debtor is a special purpose entity that owns and operates a 145,439 square foot retail property (mixed-use retail/office development) located at 18180, 18200, 18220, 18300, 18340 & 18380 Yorba Linda Boulevard in Yorba Linda, California 92886 (the "**Property**"). It is commonly known as the Yorba Linda Packing House. The Property is comprised of four multi-tenant retail buildings, a three-story office building, one freestanding restaurant building, and one single-tenant pad building. Retail tenants dominate the main retail buildings, with the anchor suite situated on the eastern portion of the office building. The office building includes interior walkways and common area restrooms. Major office tenants include Anchor

Medical and First Team Real Estate. The freestanding restaurant building is situated in the northeastern portion of the site and is occupied by Chili's Grill & Bar. The single-tenant pad building is in the northwestern portion of the site and occupied by First Team Real Estate. The Property was appraised in as-is condition in October 2024 at $47,250,000. As of the date of that value, the Property was 64.5% leased by 23 tenants. It is encumbered by a lien in favor of a secured lender, LBC3 Trust (the "**Lender**"), that is owed approximately $28.5 million.

Postpetition and because of concerns about former management, David Goodrich was appointed as the manager of the Debtor and pursuant to the terms of the written consent appointing him, he can only be removed by Court order or of the case is closed or dismissed.

The Debtor has been in communication with counsel for the Lender and the parties are working cooperatively with respect to ensuring that critical postpetition operating expenses are paid pending the Debtor's preparation of cash flow projections. Once the projections are finalized, it is anticipated that there will be a cash collateral stipulation submitted to the Court for approval.

The Property is currently insured under a group policy believed to have been obtained by Continuum Analytics, which is an asset manager for a number of different special purpose entities, including a number that have chapter 11 bankruptcy cases pending in the Central District of California and an unknown number of entities that have not sought bankruptcy protection. The Debtor understands that because of the way that the financing for the insurance policies was structured, a default by one entity in payment of its share of the premium may jeopardize the coverage for the other entities. Concerned about the possibility of a cancellation, the Debtor, under Mr. Goodrich's supervision, has obtained quotes for standalone insurance policies. The Debtor has subsequently learned that its current insurance policy is in fact in default, although a ten-day notice of cancellation has not yet been issued.

Subject to approval of this Motion, (1) Maxum Indemnity Company is prepared to issue a liability insurance policy with a general aggregate limit of $2 million and a per

occurrence limit of $1 million, a copy of which is attached as **Exhibit 1**,[1] (2) Lexington Insurance Company is prepared to issue a primary property insurance policy covering all real and personal property with a limit of liability of $10 million, and a copy of the proposal is attached as **Exhibit 2**,[2] (3) Homeland Insurance Company of New York is prepared to issue excess property insurance covering the real and personal property with a limit of liability of $19,630,200,[3] and (4) StarStone National Insurance Company and Scottsdale Insurance Company will issue umbrella coverage[4] (together, these are referred to as the "**Policies**"). The cumulative annual premiums for the Policies, with fees and taxes, total $163,248.79. The Debtor was holding approximately $354,071 as of August 30, 2026.

FIRST, which is a division of a national bank engaged in the business of financing insurance premiums, is willing to finance the $163,248.79 in premiums, taxes, and fees for the Policies, subject to Court approval, with a down payment of $45,807.20 and nine payments of $12,508.07 due on the fifth of each month. The annual percentage rate is 13.95%. To secure the repayment of this amount, any late charges, attorney's fees and expenses, and other costs under the financing agreement (collectively, the "**Indebtedness**"), the Debtor will grant and assign to FIRST a first priority lien on, and security interest in, the Policies, including all returned premiums and unearned premiums and all other collateral defined in the Finance Agreement (collectively, the "**Finance Agreement Collateral**"). A copy of the Finance Agreement is attached as **Exhibit 4**. Pursuant to the Finance Agreement, in the event of a default, the Debtor irrevocably appoint FIRST as the Debtor's attorney-in-fact with full power of substitution and authority, to: (a) cancel the Policies; (b) receive all sums assigned to it, including the Finance Agreement Collateral; and (c) execute and deliver, on the Debtor's behalf, all documents relating to the Policies in furtherance of the Finance Agreement.

---

[1] The minimum earned premium is 25%.

[2] The minimum earned premium is 35%.

[3] The minimum earned premium is 35%.

[4] StarStone has no minimum earned premium, but Scottsdale has a 25% minimum earned premium.

In order to reduce the cash the estate must fund at binding, Trustee Insurance Services is willing to advance a portion of the required down payment on the Debtor's behalf, with that advance to be repaid over five months. This means that upon Court approval of this Motion, the Debtor will need to pay FIRST $24,487.32, with nine monthly payments to FIRST of $12,508.07 starting October 5, 2026. Trustee Insurance Services will fund the balance of the deposit, which is $21,319.88, at 15% interest to be repaid over five months, which equates to $4,425.20 per month. There is no additional contract with Trustee Insurance Services other than as set forth in this Motion.

The Policies are essential to the preservation of the Debtor's assets and business and required by its secured creditors and the Office of the United States Trustee. The form of the proposed order required by FIRST is attached as **Exhibit 5**.

## III. <u>LEGAL ARGUMENT</u>

Under section 1108 of the Bankruptcy Code, the Debtor is authorized to operate its business. Section 363(c )(1) authorizes a debtor-in-possession to enter into ordinary course transactions and to use property of the estate in the ordinary course of business. The Debtor intends to enter into the Finance Agreement in the ordinary course of its affairs and believes that honoring its obligations under the Finance Agreement is in the best interests of the estate.

Section 364 of the Bankruptcy Code authorizes the Debtor to obtain postpetition financing in the manner proposed in the Finance Agreement. Specifically, Section 364(c) provides, in pertinent part, that if the debtor is unable to obtain credit solely on an unsecured basis, the court "may authorize the obtaining of credit or the incurring of debt – (2) secured by a lien on property of the estate that is not otherwise subject to a lien." 11 U.S.C. § 364(c)(2). By extending secured credit under the Finance Agreement, FIRST is enabling the Debtor to obtain coverage under the Policies, subject to FIRST's first-priority lien and security interest. Additionally, FIRST is extending financing under the Finance Agreement in good faith and is entitled to the protections of Section 364(e).

The Debtor and FIRST have reached an agreement that the adequate protection appropriate for this financing, subject to the approval of the Court, is as follows:

a. The Debtor is authorized and directed to timely make all payments due under the Finance Agreement and FIRST is authorized to receive and apply such payments to the Indebtedness pursuant to the Finance Agreement.

b. If the Debtor does not make any of the payments under the Finance Agreement as and when due, the stay of Section 362(a) (to the extent otherwise applicable) shall automatically lift (without further order of the Court) to enable FIRST and/or third parties, including insurance companies providing the coverage under the Financed Policies, to take all steps necessary and appropriate to cancel the Financed Policies, recover and collect the Finance Agreement Collateral, and apply the Finance Agreement Collateral to the Indebtedness. In exercising such rights, FIRST and/or third parties shall comply with the notice and other relevant provisions of the Finance Agreement.

c. If any Indebtedness remains unpaid after application of the Finance Agreement Collateral, following an event of a default or otherwise, such unpaid amount shall be treated as an administrative expense claim pursuant to Section 503(b)(1) in the Debtor's bankruptcy estate.

d. If there are excess returned premiums, unearned premiums, or other Finance Agreement Collateral after application of the Finance Agreement Collateral to the Indebtedness, following and event of default or otherwise, the excess shall be turned over to the Debtor or any subsequently appointed trustee (under Chapter 7 or 11).

It is common practice for insurance premium finance lenders such as FIRST to require that the Debtor grant a security interest in the insurance policies financed in exchange for financing. Absent a first-priority lien on and security interest in the Finance Agreement Collateral, FIRST would not enter into the Finance Agreement. Further, the Debtor believes that it would be unable to secure such financing on an unsecured basis from another lender on economic terms comparable to those under the Finance Agreement. The Debtor would be unable to take out the Financed Policies and obtain coverage in the absence of the Finance Agreement, and the Finance Agreement Collateral would not exist but for the Finance Agreement. The Debtor is seeking the consent of its secured creditor to the use of cash to pay the premiums for the Policies but, in the event such affirmative consent is not forthcoming, seeks authorization to use its cash to pay for the Policies because the Policies insure its collateral and protect the estate from liability for any injuries or incidents during the administration of this case.

The Debtor has determined in its business judgment that the Finance Agreement is the Debtor's best option and provides the most favorable terms. The Debtor believes the Finance Agreement and its terms are commercially fair and reasonable. The Debtor is required to maintain adequate insurance coverage and, without it, would be unable to operate. Moreover, approval of the Finance Agreement will ensure that the Debtor can continue to operate and will not prejudice the legitimate interests of creditors and other parties in interest.

Accordingly, the Debtor believes that the Motion may be granted.

## IV. CONCLUSION

WHEREFORE, the Debtor requests that the Court enter an order in the form attached as **Exhibit 5** and grant such other and further relief as the Court may deem just and appropriate.

Dated: September 8, 2026

**RAINES FELDMAN LITTRELL LLP**

By: */s/ Kyra E. Andrassy*
Kyra E. Andrassy
Counsel for Romanov Group, LLC

**DECLARATION OF DAVID GOODRICH**

I, David Goodrich, declare as follows:

1. Effective July 14, 2026, I am the Manager for Romanov Group, LLC, the debtor and debtor-in-possession in the above captioned case. I know each of the following facts to be true of my own personal knowledge, except as otherwise stated and, if called as a witness, I could and would competently testify with respect thereto. I make this declaration in support of the *Motion Pursuant to 11 U.S.C. § § 364(b) to Enter Into Premium Finance Agreement with FIRST Insurance Funding, a Division of Lake Forest Bank & Trust Company, N.A.* (the "**Motion**"). Unless otherwise defined in this declaration, all terms defined in the Motion are incorporated herein by this reference.

2. The Debtor is a special purpose entity that owns and operates a 145,439 square foot retail property (mixed-use retail/office development) located at 18180, 18200, 18220, 18300, 18340 & 18380 Yorba Linda Boulevard in Yorba Linda, California 92886 (the "**Property**"). It is commonly known as the Yorba Linda Packing House. The Property is comprised of four multi-tenant retail buildings, a three-story office building, one freestanding restaurant building, and one single-tenant pad building. Retail tenants dominate the main retail buildings, with the anchor suite situated on the eastern portion of the office building. The office building includes interior walkways and common area restrooms. Major office tenants include Anchor Medical and First Team Real Estate. The freestanding restaurant building is situated in the northeastern portion of the site and is occupied by Chili's Grill & Bar. The single-tenant pad building is in the northwestern portion of the site and occupied by First Team Real Estate. I am informed that the Property was appraised in as-is condition in October 2024 at $47,250,000. As of the date of that value, the Property was 64.5% leased by 23 tenants. It is encumbered by a lien in favor of a secured lender, LBC3 Trust (the "**Lender**"), that I am informed is owed approximately $28.5 million.

3. Postpetition and because of concerns about former management, I was appointed as the manager of the Debtor and pursuant to the terms of the written consent appointing me, I can only be removed by Court order or of the case is closed or dismissed.

4. The Debtor has been in communication with counsel the Lender and the parties are working cooperatively with respect to ensuring that critical postpetition operating expenses are paid pending the Debtor's preparation of cash flow projections. Once the projections are finalized, it is anticipated that there will be a cash collateral stipulation submitted to the Court for approval. The Property is currently insured under a group policy believed to have been obtained by Continuum Analytics, which I understand to be an asset manager for a number of different special purpose entities, including a number that have chapter 11 bankruptcy cases pending in the Central District of California and an unknown number of entities that have not sought bankruptcy protection. Based on a phone conversation with the Debtor's current insurance agent, because of the way that the financing for the insurance policies was structured, a default by one entity in payment of its share of the premium may jeopardize the coverage for the other entities. Because the Debtor does not have control over that and given the importance of having sufficient insurance coverage, I obtained quotes for a standalone insurance policy. I understand that there has been a default under the policy, but no notice of cancellation has been issued.

Subject to approval of this Motion, (1) Maxum Indemnity Company is prepared to issue a liability insurance policy with a general aggregate limit of $2 million and a per occurrence limit of $1 million, a copy of which is attached as **Exhibit 1**,[5] (2) Lexington Insurance Company is prepared to issue a primary property insurance policy covering all real and personal property with a limit of liability of $10 million, and a copy of the proposal is attached as **Exhibit 2**,[6] (3) Homeland Insurance Company of New York is prepared to issue excess property insurance covering the real and personal property with a limit of liability of $19,630,200,[7] and a copy of this proposal is attached as **Exhibit 3**, and (4) StarStone National Insurance Company and Scottsdale Insurance Company will issue umbrella coverage[8]

[5] The minimum earned premium is 25%.

[6] The minimum earned premium is 35%.

[7] The minimum earned premium is 35%.

[8] StarStone has no minimum earned premium, but Scottsdale has a 25% minimum earned premium.

(together, these are referred to as the "**Policies**"). The cumulative annual premiums for the Policies, with fees and taxes, total $163,248.79. The Debtor was holding approximately $354,071 as of August 30, 2026.

5. FIRST, which is a division of a national bank engaged in the business of financing insurance premiums, is willing to finance the $141,821.01 in premiums, taxes, and fees for the Policies, subject to Court approval, with a down payment of $42,325.25 and nine payments of $10,599.11 due on the fifteenth of each month. The annual percentage rate is 14.0%. A true and correct copy of the Finance Agreement is attached as **Exhibit 4**. The form of the order required by FIRST is attached as **Exhibit 5**.

6. In order to reduce the cash the estate must fund at binding, Trustee Insurance Services is willing to advance a portion of the required down payment on the Debtor's behalf, with that advance to be repaid over five months. This means that upon Court approval of this Motion, the Debtor will need to pay FIRST $24,487.32, with nine monthly payments to FIRST of $12,508.07 starting October 5, 2026. Trustee Insurance Services will fund the balance of the deposit, which is $21,319.88, at 15% interest to be repaid over five months, which equates to $4,425.20 per month. There is no additional contract with Trustee Insurance Services other than as set forth in this Motion.

7. Because we needed to wait for the new property manager to gather accurate information regarding the rent and operating expenses and because of inaccuracies in the financial information obtained from former management and the former property manager, I am still in the process of preparing 13-week cash flow projections that I believe are accurate and which I will submit to the secured creditor for review. I intend to seek Court approval of either a stipulation for the use of cash collateral or a motion for the use of cash collateral. Until then, I have been seeking consent on an expense by expense basis. I do not believe that utilizing the cash on hand to pay for the annual premium in one lump sum would be prudent and would likely cause the Debtor to need to seek debtor-in-possession financing to cover its other expenses pending a sale of the Property.

8. The Policies are essential to the preservation of the Debtor's assets and business and required by its secured creditors and the Office of the United States Trustee. Based on my experience as a fiduciary and because Trustee Insurance Services solicited insurance proposals and financing proposals on my behalf and the one presented to the Court is the best, I believe that the Finance Agreement offers the best terms available and that the Debtor would be unable to secure such financing on an unsecured basis from another lender on economic terms comparable to those under the Finance Agreement. The interest rate was negotiated by my broker, who was initially quoted an interest rate in the high 15s but was able to get it reduced to just under 14%. The Debtor would be unable to take out the Financed Policies and obtain coverage in the absence of the Finance Agreement because of the cash on hand, and the Finance Agreement Collateral would not exist but for the Finance Agreement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 8th day of September, 2026 at Costa Mesa, California.

David Goodrich

# EXHIBIT 1

RT Specialty
540 West Madison St
9th Floor
Chicago, IL 60661
Tom Mullins
312-878-8318

# Insurance Proposal

**August 11, 2026**

**Trustee Insurance Agency**
Attn: Jessica Cox
PO Box 190 Vicksburg, MI 49097

| | |
|---|---|
| **Applicant:** | Romanov Group LLC<br>C/O David Goodrich, 520 Newport Center Dr #480<br>Newport Beach, CA 92660 |
| **Submission #:** | APP89796289 |
| **Policy Period:** | 08/11/2026 12:01 AM To 08/11/2027 12:01 AM |
| **Coverage:** | Liability |
| **Issuing Company:** | Maxum Indemnity Company |

---

**CALIFORNIA SHORT RATE CANCELLATION PENALTY DISCLOSURE**

Please be advised that if you request cancellation of your policy prior to the expiration, the policy may be cancelled at a rate less than pro rata.

Please refer to your policy for specific terms and conditions.

RYAN® TURNER SPECIALTY

RT Specialty
540 West Madison St
9th Floor
Chicago, IL 60661
Tom Mullins
312-878-8318

# Insurance Proposal

**August 11, 2026**

**Trustee Insurance Agency**
Attn: Jessica Cox
PO Box 190 Vicksburg, MI 49097

| | |
|---|---|
| **Applicant:** | Romanov Group LLC<br>C/O David Goodrich, 520 Newport Center Dr #480<br>Newport Beach, CA 92660 |
| **Submission #:** | APP89796289 |
| **Policy Period:** | 08/11/2026 12:01 AM To 08/11/2027 12:01 AM |
| **Coverage:** | Liability |
| **Issuing Company:** | Maxum Indemnity Company |

---

We are pleased to submit our proposal for the above captioned applicant.

Please read the attached quote carefully as coverage offered may be more limited than coverage requested.

Note :

Minimum earned premium may apply to this policy. See attached carrier quote for specifics. Please note that all fees are fully earned at inception.

TRIA coverage if applicable is offered on the attached carrier's quote.

Please review any minimum and deposit, audit, and/or cancellation provisions on the attached carrier quote for details regarding possible return premiums and additional premium charges.

I look forward to hearing from you, and please call if you have any questions.

Thank you for your business.

Regards,

Tom Mullins
President
RT Specialty
Tom.Mullins@rtspecialty.com
312-878-8318

Kevin Verkler
Vice President
RT Specialty
kevin.verkler@rtspecialty.com
312-761-1053

RYAN® TURNER SPECIALTY

RT Specialty
540 West Madison St
9th Floor
Chicago, IL 60661
Tom Mullins
312-878-8318

# Insurance Proposal

## Cost Summary

| | |
|---|---|
| General Liability Premium | $28,563.00 |
| Policy Fee | $1,000.00 |
| Inspection Fee | $160.00 |
| CA Surplus Lines Tax | $861.69 |
| CA Stamp Fee | $51.70 |
| **Total Policy Cost** | **$30,636.39** |

**Minimum Earned**

Note: There may be a minimum earned on this policy. Please refer to the carrier quote for more details on the minimum earned percentage.

**Agent Commission: 11.00%**

**Disclosures**

RT Specialty is typically compensated through commission from the insurer for the placement of policies in most transactions. The amount of the commission varies by insurance line and by carrier. RT Specialty might also receive additional compensation. In order to place the insurance requested we may charge a reasonable fee for additional services such as performing a risk analysis, comparing policies, processing submissions, communication expenses, inspections, working with underwriters on the coverage proposal, issuing policies, or servicing the policy after issuance. Any fees charged are fully earned at inception of the policy. Third-party inspection or other fees may be separately itemized upon request. Our fees are applied to new policies, renewal policies, and endorsements. Fees applicable to each renewal and endorsement will be set forth in the quotes. It is the insurance carrier's decision whether to offer the insurance quoted, and your client's decision whether to accept the quote. Our fee is not imposed by state law or the Insurer.

Depending upon the Insurer involved with your placement, we might also have an agreement with the Insurer that we are proposing for this placement that might pay us future additional compensation This compensation could be based on formulas that consider the volume of business placed with the Insurer, the profitability of that business, how much of the business is retained for the Insurer's account each year, and potentially other factors. The agreements frequently consider total eligible premium from all clients placed during a calendar year and any incentive or contingent compensation is often received at a future date. Because of variables in these agreements, we often do not have an accurate means at the time of placement to determine the amount of any additional compensation that might be attributable to any single placement. You, as the retail broker with the direct relationship with the Insured, must comply with all applicable laws and regulations related to disclosure of and consent and agreement to, compensation, and informing the Insured that it may request more information about producer or broker compensation that might be paid in connection with the Insured's placement. If we request a copy of any legally required insured consent or agreement, you will provide us with a copy. If you need additional information about the compensation arrangements for services provided by RT Specialty affiliates, please contact your RT Specialty representative.

RT Specialty is a division of RSG Specialty, LLC. RSG Specialty, LLC is a Delaware limited liability company and a subsidiary of Ryan Specialty, LLC. In California: RSG Specialty Insurance Services, LLC (License # 0G97516).

RT Specialty
540 West Madison St
9th Floor
Chicago, IL 60661
Tom Mullins
312-878-8318

# Insurance Proposal

## Subjectivities

- Signed and completed Acord Application
- Due Diligence Forms (if required by state - Non-Admitted Only)
- Signed TRIA form if insured is accepting or rejecting terrorism coverage
- This quote is subject to receiving currently valued, acceptable loss runs for the last 5 policy terms prior to binding.
- Signed and completed Supplemental Application
- A written request to bind coverage is required prior to binding
- Please provide Inspection Contact Name and Phone Number at binding (email if available). Coverage is subject to a satisfactory inspection.

**The Subjectivities outlined above are required prior to binding. Please forward all requested information with your bind request. No coverage is considered bound until confirmed in writing and all subjectivities have been addressed.**

RT BINDING AUTHORITY

540 W Madison St 8th Fl
Chicago, IL 60661
312-651-6214
-
kevin.verkler@rtspecialty.com

| | |
|---|---|
| **Date:** | 8/11/2026 |
| **Attention:** | |
| **Agency:** | |
| **Regarding:** | Romanov Group LLC |
| **File Number:** | - |
| **Quoted By:** | |

# Insurance Quotation

| | |
|---|---|
| **Proposed Policy Period:** | 8/11/2026 to 8/11/2027 |
| **Issuing Carrier:** | Maxum Indemnity Company (Non-Admitted) **A.M. Best, Rating A+ XV** |
| **Primary Location:** | 18180 Yorba Linda Blvd, Yorba Linda, CA 92886 |
| **Quote is Valid:** | Until 9/25/2026 |

We are pleased to offer the following quotation for coverage. Please review the attached quotation for accuracy. Our quotation reflects the coverages we are able to offer and may not always be exactly what you requested.

| | |
|---|---|
| General Liability | $28,563.00 |
| **Total** | **$28,563.00** |
| Commission | |

Terrorism Coverage as provided by the Federal Terrorism Risk Insurance Act can be obtained for an additional premium of $2,856, plus applicable taxes and fees.

**Remarks:**

The minimum earned premium is 25%.

This policy is subject to audit. In order to bind coverage, we must receive a written request by 9/25/2026.

**DISCLAIMER:**

This quotation is being offered on the basis shown above. It does not necessarily provide the terms, conditions and/or policy coverages requested in your submission. It is your responsibility as the insured's agent to review this quote to determine coverage adequacy.

Thank you for the opportunity to quote your business.

RSG Specialty LLC (INTAC - Chicago IL)
540 W Madison St 8th Fl
Chicago, IL 60661
kevin.verkler@rtspecialty.com

**Date:** 8/11/2026
**Regarding:** Romanov Group LLC
**Quoted By:**

# General Liability Quote

**Limits**

| | |
|---|---|
| **General Aggregate Limit** | $2,000,000 |
| **Products-Completed Operations Aggregate Limit** | Subject to General Aggregate |
| **Personal and Advertising Injury Limit** | $1,000,000 Each Occurrence |
| **Each Occurrence Limit** | $1,000,000 |
| **Damages to Premises Rented to You Limit** | $100,000 Per Location |
| **Medical Expenses Limit** | $5,000 Per Person |

| | |
|---|---|
| **Deductible** | None |
| **Defense** | In Addition to Limits |
| **Defense included in deductible** | Yes |
| **Deductible shall reduce policy limits** | No |

| Loc/St/Terr | Class Code No. | Classification | Exposures | PremOp Rate | Prod/CO Rate | Advanced Premium |
|---|---|---|---|---|---|---|
| 1/CA/006 | 46607 | Parking - public - shopping centers - maintained by the insured - (lessor's risk only) | a) 220,000 | 45.819 | INCL | $10,080 |
| 1/CA/006 | 67635 | Shopping Centers - buildings or premises not occupied by the insured (lessor's risk only) | a) 148,151 | 124.756 | INCL | $18,483 |

**Additional Coverages**

| Coverage | Notes | Exposures | Premium |
|---|---|---|---|
| E1245 Assault And Battery Coverage Sublimit - General Liability - $25,000/$50,000 Limit | | 1 | INCL |
| CG2005 Additional Insured - Controlling Interest | **FULLY EARNED** | 1 | INCL |
| CG2011 Additional Insured - Managers or Lessors of Premises | **FULLY EARNED** | 1 | INCL |
| CG2018 Additional Insured - Mortgage, Assignee, or Receiver | **FULLY EARNED** | 1 | INCL |

**Line of Business Subtotal Premium:** $28,563

**Legend** a) Area c) Cost m) Admissions p) Payroll s) Sales o) Other u) Units t) Each

RSG Specialty LLC (INTAC - Chicago IL)
540 W Madison St 8th Fl
Chicago, IL 60661
kevin.verkler@rtspecialty.com

**Date:** 8/11/2026
**Regarding:** Romanov Group LLC
**Quoted By:**

# Policy Forms

**Policy Level Forms**

| Form # | Form Description |
|---|---|
| PJ (1/1/2003) | Policy Jacket |
| DECC (1/1/2003) | Common Policy Declarations |
| D-2 (1/1/2020) | California Notice |
| E048 (1/2/2003) | Minimum Earned Premium |
| E1233 (1/1/2015) | Exclusion - Terrorism |
| E142 (5/1/2021) | Service of Suit, California |
| E849 (3/1/2010) | Forms and Endorsements Schedule |
| IL0021 (7/1/2002) | Nuclear Energy Liability Exclusion (Broad Form) |
| MISC001 (7/1/2023) | Claims Reporting |

**Commercial General Liability Forms**

| Form # | Form Description |
|---|---|
| DECBGL (7/1/2005) | Commercial General Liability Coverage Part Declarations |
| CG0001 (12/1/2025) | Commercial General Liability Coverage Form |
| CG0069 (12/1/2023) | Exclusion – Violation of Law Addressing Data Privacy |
| CG2005 (4/1/2013) | Additional Insured - Controlling Interest |
| CG2011 (4/1/2013) | Additional Insured - Managers or Lessors of Premises |
| CG2018 (4/1/2013) | Additional Insured - Mortgage, Assignee, or Receiver |
| CG2107 (5/1/2014) | Exclusion - Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability - Limited Bodily Injury Exception Not Included |
| CG2109 (6/1/2015) | Exclusion - Unmanned Aircraft |
| CG2132 (5/1/2009) | Communicable Disease Exclusion |
| CG2147 (12/1/2007) | Employment-Related Practices Exclusion |
| CG2165 (12/1/2004) | Total Pollution Exclusion With A Building Heating, Cooling And Dehumidifying Equipment Exception And A Hostile Fire Exception |
| CG2167 (12/1/2004) | Fungi or Bacteria Exclusion |
| CG2426 (7/1/2004) | Amendment Of Insured Contract Definition |
| CG9909 (12/1/2019) | Premium Audit Noncompliance Charge |
| E1226 (8/1/2014) | Limitation Of Coverage To Designated Premises Or Project |
| E1245 (3/1/2015) | Assault And Battery Coverage Sublimit - General Liability |
| E1432 (5/1/2024) | Perfluoroalkyl and Polyfluoroalkyl Substances |
| E1436 (5/1/2025) | Exclusion – Endocrine Disruptors |

RSG Specialty LLC (INTAC - Chicago IL)
540 W Madison St 8th Fl
Chicago, IL 60661
kevin.verkler@rtspecialty.com

**Date:** 8/11/2026
**Regarding:** Romanov Group LLC
**Quoted By:**

| Form # | Form Description |
|---|---|
| E713 (8/1/2007) | Exclusion - Punitive or Exemplary Damages |
| E868 (9/1/2017) | Exclusion/Limitations - Combination Endorsement |
| Contains: | |
| E673 (07/01/2012) | Exclusion – Professional Services |
| E687 (09/01/2010) | Exclusion – Asbestos, Silica and Silica Dust |
| E711 (09/01/2010) | Exclusion – Lead |
| E831 (09/01/2010) | Exclusion – Breach of Contract |
| E763 (01/01/2009) | Cross Suits Exclusion |
| CG2154 (01/01/1996) | Exclusion – Designated Operations Covered By a Consolidated (Wrap-Up) Insurance Program |
| E714 (08/01/2007) | Exclusion – Unfair Competition |
| E348 (01/01/2003) | Amendment Deposit Premium and Minimum Premium |
| E704 (08/01/2007) | Amendment Premium Audit |
| E829 (01/01/2010) | Definition – Damages |

# The Hartford fact sheet

**Purpose-driven insurance leader.** The Hartford is a leader in property and casualty insurance, group benefits and mutual funds. We are proud to be widely recognized for our customer service excellence, sustainability practices, trust and integrity.

## The Hartford's businesses

### Business Insurance

- Workers' Compensation
- Property
- General Liability
- Management & Professional Liability
- Umbrella & Excess
- Auto

Plus other specialized coverages including Bond, Credit & Political Risk, Cyber, Environmental, Inland and Ocean Marine, Multinational and more.

*The Hartford also offers wholesale solutions through Navigators, a brand of The Hartford, and assumed reinsurance coverage through Navigators Re.*

**Personal Lines**

- Auto
- Home
- Renters
- Umbrella

### Employee Benefits

- Absence Management
- Group Income Protection Benefits, Life Insurance, Accidental Loss of Life and Severe Injury Benefits, and Accident & Health[1]
- Group Retiree Health
- Voluntary Benefits, including Critical Illness, Accidental Injury and Hospital Cash Benefits[1]

### Hartford Funds

- Broad range of exchange-traded funds: both strategic beta and active ETFs
- Equity, fixed income and asset allocation mutual funds subadvised by Wellington Management and Schroders

## Key facts

- Founded: 1810
- Employees: approximately 19,100
- Headquarters: Hartford, Connecticut
- The Hartford insures more than 1 million small businesses.
- Sells products primarily through a network of independent agents and brokers.
- Only nationally endorsed direct auto and home insurance program for AARP's nearly 38 million members.

## Our history



- The Hartford's trademark logo echoes the majestic stag depicted in Sir Edwin Landseer's 1851 painting Monarch of the Glen.
- The Hartford provided insurance for the only home Abraham Lincoln ever owned.



- Babe Ruth purchased a policy from The Hartford in 1920 for protection against disability.
- Since 1947, more than 112 million children have been deputized as part of the company's Junior Fire Marshal® program – one of the oldest corporate-sponsored public education programs in the country.



- The Golden Gate Bridge opened in 1937. Construction of the bridge was bonded by The Hartford.

The Hartford

**Insurance Company:** Maxum Indemnity Company

**Named Insured:** Romanov Group LLC

# POLICYHOLDER DISCLOSURE STATEMENT UNDER TERRORISM RISK INSURANCE ACT

You are hereby notified that under the federal Terrorism Risk Insurance Act (the "Act"), as amended effective January 12, 2015, you have a right to purchase insurance coverage for losses resulting from acts of terrorism, as defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury – in consultation with the Secretary of Homeland Security, and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside of the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES [85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019; and 80% beginning on January 1, 2020] OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REINBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

**ACCEPTANCE OR REJECTION OF TERRORISM INSURANCE COVERAGE**

_____ I hereby elect to purchase terrorism coverage for a prospective premium of $2,856 .

_____ I hereby decline to purchase terrorism coverage for certified acts of terrorism. I understand that I will have no coverage for losses resulting from certified acts of terrorism.

| | |
|---|---|
| ____________________ Signature of Insured | ____________________ Insurance Company |
| ____________________ Print Name/Title | ____________________ Policy Number |
| ____________________ Date | |

**TRIA Selection Rejection (01-2015)**

# IMPORTANT NOTICE:

**1. The insurance policy that you are applying to purchase is being issued by an insurer that is not licensed by the State of California. These companies are called "nonadmitted" or "surplus line" insurers.**

**2. The insurer is not subject to the financial solvency regulation and enforcement that apply to California licensed insurers.**

**3. The insurer does not participate in any of the insurance guarantee funds created by California law. Therefore, these funds will not pay your claims or protect your assets if the insurer becomes insolvent and is unable to make payments as promised.**

**4. The insurer should be licensed either as a foreign insurer in another state in the United States or as a non-United States (alien) insurer. You should ask questions of your insurance agent, broker, or "surplus line" broker or contact the California Department of Insurance at the toll-free number 1-800-927-4357 or internet website www.insurance.ca.gov. Ask whether or not the insurer is licensed as a foreign or non-United States (alien) insurer and for additional information about the insurer. You may also visit the NAIC's internet website at www.naic.org. The NAIC—the National Association of Insurance Commissioners—is the regulatory support organization created and governed by the chief insurance regulators in the United States.**

**5. Foreign insurers should be licensed by a state in the United States and you may contact that state's department of insurance to obtain more information about that insurer. You can find a link to each state from this NAIC internet website: https://naic.org/state_web_map.htm.**

**6. For non-United States (alien) insurers, the insurer should be licensed by a country outside of the United States and should be on the NAIC's International Insurers Department (IID) listing of approved nonadmitted non-United States insurers. Ask your agent, broker, or "surplus line" broker to obtain more information about that insurer.**

**7. California maintains a "List of Approved Surplus Line Insurers (LASLI)." Ask your agent or broker if the insurer is on that list, or view that list at the internet website of the California Department of Insurance: www.insurance.ca.gov/01-consumers/120-company/07-lasli/lasli.cfm.**

**8. If you, as the applicant, required that the insurance policy you have purchased be effective immediately, either because existing coverage was going to lapse within two business days or because you were required to have coverage within two business days, and you did not receive this disclosure form and a request for your signature until after coverage became effective, you have the right to cancel this policy within five days of receiving this disclosure. If you cancel coverage, the premium will be prorated and any broker's fee charged for this insurance will be returned to you.**

**Date: ____________________________**

**Insured: _________________________**

**D-1 (Effective January 1, 2020)**

# DILIGENT SEARCH REPORT

1.) ________________________________________ hereby submits that he/she is:
(Full Name of the Individual)
(A) Duly licensed under California Department of Insurance license number ________;
**OR** (B) Duly licensed and authorized to act as an endorsee of the organizational license of
___________________________., California Department of Insurance license number _____________
(Name of the Organization)
and (C) that he/she or said organizational licensee was engaged by the insured named herein, or the insured's broker to obtain insurance as described in this report;
and (D) is the licensee who performed or supervised this diligent search.

---

2. (A) Name of Insured: ______________________________

(B) Address of Insured: ______________________________
(Street and Number)
______________ California ______________
(City) (State) (Zip Code)
(C) Description of Risk: ______________________________
e.g. Laundromat, liquor store, NOT TYPE OF COVERAGE)
(D) Location of Risk: ______________________________
(Street and Number)
______________ California ______________
(City) (State) (Zip Code)
(E) Type of Insurance coverage: ____________
(Enter Appropriate Code Number from Pg. 3)

---

3. If Private Passenger Automobile Liability Insurance is identified on line 2(E), complete the following.
(A) Does the insured qualify as a "Good Driver" under Section 1861.025 of the California Insurance Code?
(CHECK ONE) Yes [ ] NO [x]
(B) Does the coverage that you have placed include, in whole or in part, the limits of coverage provided under the California Automobile Assigned Risk Plan (CAARP)? (CHECK ONE) Yes [ ] NO [x]
.(C) If YES, has this risk been submitted to and found to be ineligible by CAARP?
(CHECK ONE) Yes [ ] NO [x]
If your answer is NO, then this coverage cannot be placed with a non-admitted insurer. (See Insurance Code section 1763.5)

---

4. If Health Insurance is identified on line 2(E), does the insured qualify as a "Small Employer" under Section 10700(x) of the California Insurance Code? (CHECK ONE) Yes [ ] NO [x]

---

5. If this insurance was placed pursuant to Section 125 et seq. of the California Insurance Code governing transactions with risk purchasing groups authorized by the Federal Liability Risk Retention Act of 1986, complete the following.

(A) Provide the name and address of the purchasing group of which the insured is a member __________________.
______________________________________________.
______________________________________________

6. (A) Describe the diligent efforts made to place this coverage with admitted insurers and describe how the search Was performed (please add additional pages if necessary): Admitted companies were contacted by phone.
______________________________________________
______________________________________________
______________________________________________

(SL-2 (Revised 06/2004)

(B) If search was performed by someone other than the person named on line 1, please provide full name of that individual : _____

7. (A) Was the risk described in Section 2 submitted by you or by someone under your supervision to at least (3) Insurers that are admitted in California and who actually write the type of insurance described on lines 2 (C) and 2 (E)? (CHECK ONE) Yes [ ] NO [x ]

(B) If YES, please complete ALL sections of the following table; if NO, skip to Section 8:

| Full Name of Admitted Company | First & last Name of Company Representative AND Telephone Number | Check if Employee (E) or Agent (A) | Month, Year of Declination | Declination Code* |
|---|---|---|---|---|
| 1. | (___) ____-____ Or "Online Declination" Website | E [ ] A [ ] | - | |
| 2. | (___) ____-____ Or "Online Declination" Website | E [ ] A [ ] | - | |
| 3. | (___) ____-____ Or "Online Declination" Website | E [ ] A [ ] | - | |

*Declination Codes: 1 – Company's capacity reached 2 – underwriting reason 3 – refused to state 4 – other

8. If 7(A) was answered NO, complete the following:

(A) Did you determine that fewer than 3 admitted insurers actually write the type of insurance described on lines (CHECK ONE) Yes [x] NO [ ]

(B) If NO, please explain in detail why the risk was submitted to less than three admitted insurers in California that write this type of insurance. ____________

(C) If YES, please describe how you made this determination: Past experience with this type of risk has found the admitted markets unwilling to provide the coverage needed by the insured due to underwriting reasons.

The undersigned licensee hereby certifies that this report is true and correct, and that this risk is not being placed with a non-Admitted insurer for the sole purpose of securing a rate or premium lower than the lowest rate or premium available from an Admitted insurer.

______________________ (Signature of Licensee Named on Line 1) ______________________ (Date)

SL-2 (Revised 06/2004)

STETSON
INSURANCE FUNDING

We are pleased to introduce you to Stetson Insurance Funding, LLC ("Stetson") an affiliate of Ryan Specialty Group that operates its premium finance business. Stetson will be providing an automated premium finance agreement for your clients' commercial insurance risks placed through RT Specialty.

Stetson has teamed up with FIRST Insurance Funding ("FIRST"), the largest premium finance company in North America. Under this collaboration, FIRST will be the lender, as listed on the premium finance agreement, and the loan will be serviced by FIRST. Stetson will be your main point of contact throughout the life of the loan and provide ongoing support to your agency.

## EASY SET UP FOR AGENTS TO OBTAIN FINANCING:

1. Receive an automated premium finance agreement with eligible commercial insurance risks placed through RT Specialty.
2. Make changes to the premium finance agreement by:
    - Visiting our website at www.stetsonfunding.com
    - Emailing us at quotes@stetsonfunding.com
    - Calling us at 1-866-856-1112
3. Down payment to be collected by the agent from the insured in good funds and sent to the General Agent or Carrier.
4. Return the signed premium finance agreement to agreements@stetsonfunding.com.
5. Stetson will finalize the loan and have funding issued for the amount financed.

We look forward to exceeding your premium financing expectations.

# IMPORTANT NOTICE:

**1. The insurance policy that you are applying to purchase is being issued by an insurer that is not licensed by the State of California. These companies are called "nonadmitted" or "surplus line" insurers.**

**2. The insurer is not subject to the financial solvency regulation and enforcement that apply to California licensed insurers.**

**3. The insurer does not participate in any of the insurance guarantee funds created by California law. Therefore, these funds will not pay your claims or protect your assets if the insurer becomes insolvent and is unable to make payments as promised.**

**4. The insurer should be licensed either as a foreign insurer in another state in the United States or as a non-United States (alien) insurer. You should ask questions of your insurance agent, broker, or "surplus line" broker or contact the California Department of Insurance at the toll-free number 1-800-927-4357 or internet website www.insurance.ca.gov. Ask whether or not the insurer is licensed as a foreign or non-United States (alien) insurer and for additional information about the insurer. You may also visit the NAIC's internet website at www.naic.org. The NAIC—the National Association of Insurance Commissioners—is the regulatory support organization created and governed by the chief insurance regulators in the United States.**

**5. Foreign insurers should be licensed by a state in the United States and you may contact that state's department of insurance to obtain more information about that insurer. You can find a link to each state from this NAIC internet website: https://naic.org/state_web_map.htm.**

**6. For non-United States (alien) insurers, the insurer should be licensed by a country outside of the United States and should be on the NAIC's International Insurers Department (IID) listing of approved nonadmitted non-United States insurers. Ask your agent, broker, or "surplus line" broker to obtain more information about that insurer.**

**7. California maintains a "List of Approved Surplus Line Insurers (LASLI)." Ask your agent or broker if the insurer is on that list, or view that list at the internet website of the California Department of Insurance: www.insurance.ca.gov/01-consumers/120-company/07-lasli/lasli.cfm.**

**8. If you, as the applicant, required that the insurance policy you have purchased be effective immediately, either because existing coverage was going to lapse within two business days or because you were required to have coverage within two business days, and you did not receive this disclosure form and a request for your signature until after coverage became effective, you have the right to cancel this policy within five days of receiving this disclosure. If you cancel coverage, the premium will be prorated and any broker's fee charged for this insurance will be returned to you.**

**Date: ____________________________**

**Insured: __________________________**

**D-1 (Effective January 1, 2020)**

## INSTRUCTIONS

**SECTION 1:** Please provide the full name, as it is written on the individual's California license, of the individual who performed or supervised the diligent search. If the search was performed under the individual's license number, enter the individual's California license number in section (A) or if the individual was authorized as an endorsee under an organizational license, enter the name of the organization and its California license number in section (B).

**SECTION 3:** Please provide a complete response to section (A), and if applicable to section (B). Note: The Insurance Commissioner or his designee may require the surplus line broker to conduct additional searches among admitted insurers for similar placements in the future. (California Insurance Code section 1763[b]) An incomplete response will be tagged and may unnecessarily result in a request for a further search to be conducted.

- **SECTION 3(A):** To avoid misidentification among insurers with similar names, please provide the complete name of the admitted insurer as listed in the California Department of Insurance (CDI) Official Publication of Admitted Companies and the insurance company's National Association of Insurance Commissioners (NAIC) number. Please include Insurer contact name and telephone number or email address, or if a website based quoting platform was used, enter the website name.

  Please refer to the California Department of Insurance Official Publication of Admitted Companies.
  https://interactive.web.insurance.ca.gov/apex_extprd/f?p=144:1

- **SECTION 3(B):** The detailed explanation in section 3(B) must include a description of the steps the broker took to determine whether three insurers write the type of insurance or risk and the reasoning for the determination. A conclusory statement is insufficient.

**SIGNATURE:** The Surplus Line Association of California (SLA) will accept a wet signature or a digital and electronic signature from the California Secretary of State's Approved List of Digital Signature Certification Authorities. Please refer to the following link:

https://www.sos.ca.gov/administration/regulations/current-regulations/technology/digital-signatures/approved-certification-authorities/

**IMPORTANT:** Persons who are licensed only as an agent are authorized to offer risks only to admitted insurers for which they are appointed agents (California Insurance Code section 1704). Agents are not authorized to offer a risk to admitted insurers for which they are not appointed agents. A search which is limited to only those companies that have appointed the agent may not necessarily constitute a diligent search of the admitted market.

**WHAT TO FILE:** This report must be filed along with the Confidential Report of Surplus Line Placement. (SL-1 Form). File this Form with signature, and, only if applicable, the Addendum.

**WHERE TO FILE:** The SL-1 Form and this report are to be filed by the surplus line broker with SLA within 60 days of placement of coverage with non-admitted insurer(s).

**MULTIPLE LICENSEES CONDUCTING SEARCH:** If two or more licensees conduct a diligent search of admitted insurers, then each licensee must complete a Diligent Search Report (SL-2 Form). All such reports should be attached to the SL-1 Form.

Please refer to the **Coverage Code List** and **Export Code List** under Resources on the Learning Center for the full list of coverages and their respective codes.

https://learningcenter.slacal.com/resources/filing-requirements-and-procedures/coverage-codes
https://learningcenter.slacal.com/resources/filing-requirements-and-procedures/export-list-codes

The Surplus Line Association of California

# DILIGENT SEARCH REPORT (SL-2 FORM)

**①**

Before completing this report, please review the instructions on page 2.

I, ______________________________, hereby submit that I performed or supervised this diligent search, and I am:

***(A)*** licensed as an individual agent-broker for the applicable lines of insurance or surplus line broker under California license number ____________; **OR**

***(B)*** licensed and an endorsee on the license of ______________________________ (**Full Name of Organization**), California license number ______________________________

**②**

***(A)*** Name of Insured: Romanov Group LLC

***(B)*** Description of Risk: ______________________________
(e.g., Tattoo Parlor, Cannabis Dispensary, Vacant Building, **NOT TYPE OF COVERAGE**)

***(C)*** Type of Insurance or Coverage Code: ______________________________

**③**

Describe the diligent efforts made to place this coverage with admitted insurers by completing (A) or, if applicable, (B) below.

***(A)*** List the insurers admitted in California who actually write the type of insurance described on lines 2(B) and 2(C) to which you or someone under your supervision submitted the risk described in lines 2(A) through 2(C). Please complete **ALL** sections of the table below.

| | INSURER ① | INSURER ② | INSURER ③ |
|---|---|---|---|
| **NAIC ID** | | | |
| **MONTH, YEAR OF DECLINATION** | | | |
| **FULL NAME OF ADMITTED INSURER** | | | |
| CONTACT INFORMATION **FULL NAME** | | | |
| **PHONE / EMAIL** | | | |
| ***OR* WEBSITE** | | | |

***(B)*** If you did not list at least three insurers in 3(A) above, describe in detail how you determined that fewer than **THREE** admitted insurers write the type of insurance described on lines 2(B) and 2(C). ______________________________

______________________________

**④**

Is the type of insurance you are reporting as identified in line 2(C) **private passenger automobile liability or health**? Yes ☐ No ☐

If you answered "yes," please complete the Diligent Search Report Addendum.

The undersigned licensee hereby certifies that this report is true and correct, and that this risk is not being placed with a non-admitted insurer for the sole purpose of securing a rate or premium lower than the lowest rate or premium available from an admitted insurer.

______________________________ (Signature of Licensee Named on Line 1)

______________________________ (Date)

# DILIGENT SEARCH REPORT (SL-2 FORM) ADDENDUM

## PRIVATE PASSENGER AUTOMOBILE LIABILITY INSURANCE COVERAGE OR HEALTH INSURANCE COVERAGE

1. If **Private Passenger Automobile Liability Insurance** is identified on line 2(C), complete the following:

(A) Does the insured qualify as a "Good Driver" under Section 1861.025 of the California Insurance Code?
https://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?lawCode=INS&sectionNum=1861.025.

**(CHECK ONE) YES** ☐ **NO** ☐

(B) Does the coverage that you have placed include, in whole or in part, the limits of coverage provided under the California Automobile Assigned Risk Plan (CAARP)?

**(CHECK ONE) YES** ☐ **NO** ☐

If YES, has this risk been submitted to and found to be ineligible by CAARP?

**(CHECK ONE) YES** ☐ **NO** ☐

If your answer is NO, this coverage cannot be placed with a non-admitted insurer.
(See California Insurance Code section 1763.5)
https://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?lawCode=INS&sectionNum=1763.5.

2. If **Health Insurance** is identified on line 2(C), does the insured qualify as a "Small Employer" under

California Insurance Code section 10700(x)?
https://leginfo.legislature.ca.gov/faces/codes_displayText.xhtml?lawCode=INS&division=2.&title=&part=2.&chapter=8.&article=1.

**(CHECK ONE) YES** ☐ **NO** ☐

# EXHIBIT 2

RT Specialty
540 West Madison St
9th Floor
Chicago, IL 60661
Tom Mullins
312-878-8318

# Insurance Proposal

**August 12, 2026**

**Trustee Insurance Agency**
Attn: Jessica Cox
PO Box 190 Vicksburg, MI 49097

**Applicant:** Romanov Group LLC
C/O David Goodrich, 520 Newport Center Dr #480
Newport Beach, CA 92660

**Submission #:** APP89796289
**Policy Period:** 08/12/2026 12:01 AM To 08/12/2027 12:01 AM
**Coverage:** Property
**Issuing Company:** Lexington Insurance Company

---

**CALIFORNIA SHORT RATE CANCELLATION PENALTY DISCLOSURE**

Please be advised that if you request cancellation of your policy prior to the expiration, the policy may be cancelled at a rate less than pro rata.

Please refer to your policy for specific terms and conditions.

RYAN®
TURNER
SPECIALTY

RT Specialty
540 West Madison St
9th Floor
Chicago, IL 60661
Tom Mullins
312-878-8318

# Insurance Proposal

**August 12, 2026**

**Trustee Insurance Agency**
Attn: Jessica Cox
PO Box 190 Vicksburg, MI 49097

| | |
|---|---|
| **Applicant:** | Romanov Group LLC<br>C/O David Goodrich, 520 Newport Center Dr #480<br>Newport Beach, CA 92660 |
| **Submission #:** | APP89796289 |
| **Policy Period:** | 08/12/2026 12:01 AM To 08/12/2027 12:01 AM |
| **Coverage:** | Property |
| **Issuing Company:** | Lexington Insurance Company |

---

We are pleased to submit our proposal for the above captioned applicant.

Please read the attached quote carefully as coverage offered may be more limited than coverage requested.

Note :

Minimum earned premium may apply to this policy. See attached carrier quote for specifics. Please note that all fees are fully earned at inception.

TRIA coverage if applicable is offered on the attached carrier's quote.

Please review any minimum and deposit, audit, and/or cancellation provisions on the attached carrier quote for details regarding possible return premiums and additional premium charges.

I look forward to hearing from you, and please call if you have any questions.

Thank you for your business.

Regards,

Tom Mullins
President
RT Specialty
Tom.Mullins@rtspecialty.com
312-878-8318

Kevin Verkler
Vice President
RT Specialty
kevin.verkler@rtspecialty.com
312-761-1053

RYAN® TURNER SPECIALTY

RT Specialty
540 West Madison St
9th Floor
Chicago, IL 60661
Tom Mullins
312-878-8318

# Insurance Proposal

## Cost Summary

| | |
|---|---|
| Property Premium | $75,000.00 |
| CA Surplus Lines Tax | $2,295.00 |
| CA Stamp Fee | $137.70 |
| Carrier Inspection Fee | $1,500.00 |
| Policy Fee | $1,000.00 |
| **Total Policy Cost** | **$79,932.70** |

**Minimum Earned**

Note: There may be a minimum earned on this policy. Please refer to the carrier quote for more details on the minimum earned percentage.

**Agent Commission: 10.00%**

**Disclosures**

RT Specialty is typically compensated through commission from the insurer for the placement of policies in most transactions. The amount of the commission varies by insurance line and by carrier. RT Specialty might also receive additional compensation. In order to place the insurance requested we may charge a reasonable fee for additional services such as performing a risk analysis, comparing policies, processing submissions, communication expenses, inspections, working with underwriters on the coverage proposal, issuing policies, or servicing the policy after issuance. Any fees charged are fully earned at inception of the policy. Third-party inspection or other fees may be separately itemized upon request. Our fees are applied to new policies, renewal policies, and endorsements. Fees applicable to each renewal and endorsement will be set forth in the quotes. It is the insurance carrier's decision whether to offer the insurance quoted, and your client's decision whether to accept the quote. Our fee is not imposed by state law or the Insurer.

Depending upon the Insurer involved with your placement, we might also have an agreement with the Insurer that we are proposing for this placement that might pay us future additional compensation This compensation could be based on formulas that consider the volume of business placed with the Insurer, the profitability of that business, how much of the business is retained for the Insurer's account each year, and potentially other factors. The agreements frequently consider total eligible premium from all clients placed during a calendar year and any incentive or contingent compensation is often received at a future date. Because of variables in these agreements, we often do not have an accurate means at the time of placement to determine the amount of any additional compensation that might be attributable to any single placement. You, as the retail broker with the direct relationship with the Insured, must comply with all applicable laws and regulations related to disclosure of and consent and agreement to, compensation, and informing the Insured that it may request more information about producer or broker compensation that might be paid in connection with the Insured's placement. If we request a copy of any legally required insured consent or agreement, you will provide us with a copy. If you need additional information about the compensation arrangements for services provided by RT Specialty affiliates, please contact your RT Specialty representative.

RT Specialty is a division of RSG Specialty, LLC. RSG Specialty, LLC is a Delaware limited liability company and a subsidiary of Ryan Specialty, LLC. In California: RSG Specialty Insurance Services, LLC (License # 0G97516).

RT Specialty
540 West Madison St
9th Floor
Chicago, IL 60661
Tom Mullins
312-878-8318

# Insurance Proposal

## Subjectivities

- Signed and completed Acord Application
- Due Diligence Forms (if required by state - Non-Admitted Only)
- Signed TRIA form if insured is accepting or rejecting terrorism coverage
- This quote is subject to receiving currently valued, acceptable loss runs for the last 5 policy terms prior to binding.
- Signed and completed Supplemental Application
- A written request to bind coverage is required prior to binding
- Please provide Inspection Contact Name and Phone Number at binding (email if available). Coverage is subject to a satisfactory inspection.
- Subjectivities & conditions per the Lexington quote letter.

**The Subjectivities outlined above are required prior to binding. Please forward all requested information with your bind request. No coverage is considered bound until confirmed in writing and all subjectivities have been addressed.**

RYAN® TURNER SPECIALTY

RT Specialty
540 West Madison St
9th Floor
Chicago, IL 60661
Tom Mullins
312-878-8318

# Insurance Proposal

---

## NOTICE

## Occurrence Limit of Liability

## (OLLE) Scheduled Limits

Blanket coverage for first-party property insurance risks has become increasingly difficult to secure and often is not available regardless of price.

Please note that your quote may not provide coverage on a blanket basis and, based on current market conditions, a blanket coverage option might not be available. Any reference(s) to an Occurrence Limit of Liability Endorsement (OLLE), margin clause, maximum amount payable, and/or scheduled limits indicate that blanket coverage is not provided. Instead, the amount of recovery afforded by the policy is limited in some respect to the amount(s) set forth on the Statement of Values (SOV) provided to the insurer. This potentially can materially reduce the insured's recovery in the event of a loss as compared to blanket coverage. Additionally, the policy language for these clauses may vary by insurer and some insurers limit the amount recoverable for extensions of coverage, additional coverages, and additional covered property to the values as shown on the SOV.

Please review this quote very carefully to determine if coverage is being offered or provided on a blanket, or some other more limited, basis.

As such, we strongly recommend that you confirm that the insured is in agreement that they have provided full and accurate amounts for the values set forth on the SOV. RT Specialty expressly disclaims any responsibility for the accuracy or adequacy of the values provided on an SOV. We also note that all decisions concerning coverage and the application of the terms, provisions, conditions, limitations or exclusions of the policy to any claim are made exclusively by the insurers.

Lexington Insurance Company,
an AIG company
CA Surplus Lines License #6003097

99 High Street
Boston, MA 02110

| | | | |
|---|---|---|---|
| To: | **RSG Specialty** | eStart# : | **304950358** |
| | **540 West Madison St.,, Floor 9** | Policy Period: | **08/12/2026 - 08/12/2027** |
| | **Chicago, IL 60661** | | |
| Attn: | **Kevin Verkler** | Policy Type: | **Property** |
| | | State: | **CA** |

Applicant: **Romanov Group LLC, c/o David Goodrich**
**520 Newport Center Dr #480**
**Newport Beach, CA 92660**

**Premium Summary**

| | |
|---|---|
| Total Premium | $75,000.00 |
| Total Fees | $1,500.00 |
| **Grand Total** | **$76,500.00** |

**Fees & Taxes**

| | |
|---|---|
| Inspection Fee | $1,500.00 |

Additional Premium for Certified Acts of Terrorism Coverage: $5,625.00 plus tax.

**Quoted By**

**Lexington Insurance Company** (BEST RATING: A Excellent; Non-Admitted)

**Commercial Property**

**Property Coverage Summary**

| | |
|---|---|
| **Property Policy Type:** | Primary |
| **Limit Type:** | Primary Per Occurrence, Per Schedule |
| **Per Schedule:** | On File With Company |
| **Limit(s) of Liability:** | $10,000,000 |
| **Total Insurable Value:** | $29,630,200 |
| **Cause(s) of Loss:** | Special excluding Earthquake and Flood |
| **Coverages:** | Building |
| **Deductible(s) per occurrence:** | $25,000 |
| **Wind/Hail Deductible Exception:** | N/A |
| **Subject to Minimum Deductible:** | N/A |
| **Coinsurance:** | 0% |
| **Valuation:** | Replacement Cost |
| **Equipment Breakdown:** | No |

**Additional Notes**

Coverage is Scheduled, NOT Blanket.

ACV on roofs older than 15 years.

**We offer the following quote subject to**

1. The attached "NOTICE OF TERRORISM INSURANCE COVERAGE" must be completed and signed by the insured. No coverage may be bound without this completed and signed notice.
2. If Premium State = NJ: Please include NJ SLA number.
3. A completed, signed and returned Broker Responsible for Surplus Lines Filing Agreement PRIOR to binding.
4. An inspection (please note inspection fees are fully earned at time of binding).
5. Condition of coverage is that heat will be maintained above 55 degrees Fahrenheit or pipes will be fully drained during the entirety of the policy period. If not maintained, water damage exclusion applies.
6. An inspection must be scheduled to occur within 60 days of the effective date of this policy. If an inspection has not been completed within 60 days, we reserve the right to cancel this policy for noncompliance of the inspection requirements.
7. 3 years currently valued loss runs showing insured has been loss free

## Additional Coverage Notes

**CP1211 (10/00) Burglary and Robbery Protective Safeguards**

PREM # : all

BLDG # : all

PROT SYMBOLS : BR-4

DESCRIBE (BR-4) : Warrant vacant units are locked and secured against illegal entry.

**PR0303 (05/15) Multiple Deductible Form**

Premises Number One : all

Building Number One : all

Deductible : $50,000

Covered Causes of Loss : water damage

Premises Number Two : all

Building Number Two : all

Deductible : $50,000

Covered Causes of Loss : sprinkler leakage

**PR1210 (01/19) Protective Safeguards**

Premises Number : per

Building Number : sov

Protective Safeguards : P-1

Premises Number : all

Building Number : all

Protective Safeguards : P-5, P-9

P-9 Description : Warrant vacant units are locked and secured against illegal entry.

**PR9909 (04/15) Minimum Earned Premium**

Minimum Earned Premium Percentage : 35

**PR9919 (09/19) Limitations On Coverage For Roof Surfacing**

Premises Number : all

Building Number : all

Applicable Paragraph : B

## Form List

Subject to the following Endorsements:

| Form No | ED Date | Form Name |
|---|---|---|
| 91222 | 09/16 | Policyholder Notice |
| CP0010 | 06/07 | Building and Personal Property Coverage Form |
| CP0090 | 07/88 | Commercial Property Conditions |
| CP0140 | 07/06 | Exclusion of Loss Due to Virus or Bacteria |
| CP1030 | 06/07 | Causes Of Loss - Special Form |
| CP1075 | 12/20 | Cyber Incident Exclusion |
| CP1211 | 10/00 | Burglary and Robbery Protective Safeguards |
| D-2 | 01/20 | Important Notice |
| IL0017 | 11/98 | Common Policy Conditions |
| IL0935 | 07/02 | Exclusion of Certain Computer-Related Losses |
| ILP001 | 01/04 | U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders |
| NTCFR01 | 10/20 | Notice to Policyholders Fraud Notice |
| PR0303 | 05/15 | Multiple Deductible Form |
| PR1001 | 10/14 | Water Exclusion |
| PR1002 | 10/14 | Earth Movement Exclusion |
| PR1027 | 09/20 | Aluminum Wiring Exclusion |
| PR1202 | 09/19 | Limits of Insurance Endorsement |
| PR1203 | 03/15 | Condition of Coverage Endorsement |
| PR1210 | 01/19 | Protective Safeguards |
| PR1212 | 03/20 | Definition of Actual Cash Value Endorsement |
| PR1401 | 03/15 | Prior Loss |
| PR9909 | 04/15 | Minimum Earned Premium |
| PR9910 | 09/19 | Primary Insurance Provisions Endorsement |
| PR9919 | 09/19 | Limitations On Coverage For Roof Surfacing |
| PRDS01 | 03/21 | Commercial Property Coverage Part Declarations |
| WW22 | 01/21 | Service of Suit Endorsement |
| WW230 | 01/21 | Common Policy Declarations |
| WW425 | 02/08 | Exclusion of Chemical and Biological Loss or Damage |
| WW458 | 06/13 | Asbestos Exclusion |
| WW497 | 01/21 | Notice - Claim Reporting |
| WWCA01 | 12/11 | California Disclosure Notice Premium Refund |

If the insured accepts Certified Acts of Terrorism Coverage for Property and pays the appropriate premium the following endorsements apply:

- IL0986 - Exclusion Of Certified Acts Of Terrorism Involving Nuclear, Biological, Chemical Or Radiological Terrorism; Cap On Covered Certified Acts Losses

If the insured rejects Certified Acts of Terrorism Coverage for Property and does not pay the appropriate premium the

following endorsements apply:

- IL0953 - Exclusion of Certified Acts of Terrorism

The attached "NOTICE OF TERRORISM INSURANCE COVERAGE" (NTC TR01) must be completed and signed by the insured. No coverage may be bound without this completed and signed notice.

These rates, terms and conditions are valid for **30** days from the date of this Quote.

We are pleased to offer the preceding quotation which should be reviewed carefully as the terms and conditions of coverage may differ from those requested on your application / submission.

**Please advise your client that Lexington Specialty Insurance Agency, Inc. ("Lexington Specialty") is offering this quote as representative of its affiliated surplus lines insurance company,Lexington Insurance Company. Lexington Specialty is not acting on behalf of your client and does not seek placements in other surplus lines markets.**

You are the surplus lines broker of record and are responsible for the collection, reporting and payment of applicable surplus lines taxes and fees.

If coverage is bound, the premium must be remitted within 30 days of effective date or 15 days from billing, whichever is later. It is your responsibility to follow applicable state surplus lines laws and, in particular, to see that the appropriate surplus lines tax (and stamping fee, if applicable) is collected and paid.

**Important:** In order to complete the underwriting process, we require that you send us the additional information requested in the subject to information in this letter. We are not required to bind coverage prior to our receipt, review and underwriting approval of the requested information. However, we may bind coverage before we have received, reviewed and approved the information. In such event, we have the right to cancel the insurance upon 10 days notice if the completed and signed Broker Responsible for Surplus Lines Filings Agreement is not received by us within 10 days from the effective date of coverage. Additionally, if we have not received the other information requested within the specified time frame then we have the right to cancel the insurance upon 20 days notice.

**Please complete and return to: LexESPropertyBR@aig.com**

## BROKER RESPONSIBLE FOR SURPLUS LINES FILING AGREEMENT

**Insured Name:** Romanov Group LLC, c/o David Goodri

**Policy Number:** ____________

**Submission #:** 304950358

**Effective Date:** 08/12/2026

**Gross Premium:** $75,000.00

**This policy is written on a surplus lines basis by (please check the appropriate box):**

☐ AIG Specialty Insurance Company ☒ Lexington Insurance Company

☐ Other:

(The following states require that filings be submitted with an individual surplus lines license: AL, AR, DE, FL, GA, ID, IL, IA, KS, KY, MN,MS, MO, MT, RI, SC, SD, TN, VT, WV, WI, WY)

**Check if either applies:**

☐ Unaffiliated Insured Group Policy - a policy issued to a group of named insureds who are not related entities.

☐ Risk Purchasing Group - a policy issued to a legal entity that was created under the Federal Liability Risk Retention Act for the purpose of purchasing group liability insurance.

**If one of the above is checked, attach a schedule listing the Surplus Lines filing license for each member's home state.**

**For completion by Broker if AIG Producer Agreement/Surplus Lines Broker Responsibility Addendum is in place:**

**Agreement ID #** ____________ **Home State** CA **Home State SL# or NJ SLA # (if NJ is home state)** ____________

**For completion by Broker if no AIG Producer Agreement/Surplus Lines Broker Responsibility Addendum is in place:**

It is agreed that the following surplus lines agent/broker is responsible for all surplus lines filing, reporting, tax and fee collection, and payment requirements imposed by applicable law in the insured's **Home State** (see attached definition).

Insured's **Home State**: CA Surplus Lines Licensee: ____________

**Home State** Surplus Lines **Filing** License Number: ____________ OR NJ SLA #: ____________

**A copy of the surplus lines license referenced above as well as any documentation supporting the payment of surplus lines taxes and applicable fees hereunder will be made available upon request.**

**CALIFORNIA HOME STATE RISKS:**Pursuant to subdivision (b) of Section 1774 of the California Insurance Code, a copy of this Agreement shall be made available to the California Commissioner of Insurance or his or her designee upon request. It is agreed that the responsibility for filing the Confidential Report of Surplus Lines Placement (SL-1 Form) is delegated to the abovementioned surplus lines broker.

**TEXAS HOME STATE RISKS:**Pursuant to Section 981.223 and 225.006 of the Texas Insurance Code, a copy of this Agreement shall be made available for inspection by the Department of Insurance and the Comptroller of Public Accounts upon request. It is hereby agreed that the responsibility for all filing, reporting, collection, and payment requirements imposed by Chapter 225 and Chapter 981 of the Texas Insurance Code is delegated to the surplus lines agency identified above.

**Please complete box 1 or 2**

**CA/TX:** requires the individual surplus lines license number and signature of the licensed agent/broker even if it is not the filing license.

By: ____________ ____________

Signature (Typed Script Font/Stamp NOT Permitted) Date (MM/DD/YY)

____________

Individual Surplus Lines License Number

____________

Name (Please Print)

____________

Agency/Firm Name (Please Print)

**All Others:**

By: ____________ ____________

Signature (Typed Script Font/Stamp NOT Permitted) Date (MM/DD/YY)

____________

Name (Please Print)

____________

Agency/Firm Name (Please Print)


© All Rights Reserved

# DEFINITIONS

**HOME STATE -**

(A) In general. - Except as provided in subparagraph (B), the term "Home State" means, with respect to an insured -

(i) the state in which an insured maintains its principal place of business or, in the case of an individual, the individual's principal residence; or

(ii) if 100 percent of the insured risk is located out of the state referred to in clause (i), the state to which the greatest percentage of the insured's taxable premium for that insurance contract is allocated.

(B) Affiliated Groups. - If more than 1 insured from an affiliated group are named insureds on a single non-admitted insurance contract, the term "Home State" means the Home State, as determined pursuant to subparagraph (A), of the member of the affiliated group that has the largest percentage of premium attributed to it under such insurance contract.

**AFFILIATE -** The term "affiliate" means, with respect to an Insured, any entity that controls, is controlled by, or is under common control with the Insured.

**AFFILIATED GROUP -** The term "affiliated group" means any group of entities that are all affiliated.

**CONTROL -** An entity has "control" over another entity if -

(A) the entity directly or indirectly or acting through 1 or more other persons owns, controls or has the power to vote 25 percent or more of any class of voting securities of the other entity; or

(B) the entity controls in any manner the election of a majority of the directors or trustees of the other entity.

**PRINCIPAL PLACE OF BUSINESS -** The term "principal place of business" means, with respect to determining the Home State of the Insured:

(A) the state in which an Insured maintains its headquarters and the Insured's high level officers direct, control, and coordinate the business activities; or

(B) if the Insured is a company which maintains outside any state its headquarters where the Insured's high level officers direct, control, and coordinate the business activities, (for example, a foreign company headquartered in a foreign country), then the state where the largest percentage of the risk resides, i.e. the state to which the greatest percentage of the Insured's taxable premium for the insurance contract is allocated.

**PRINCIPAL RESIDENCE -** "Principal residence" means, with respect to determining the Home State of the insured,

(a) the state where the insured resides for the greatest number of days during a calendar year; or

(b) if the insured's principal residence is located outside any state, the state to which the greatest percentage of the insured's taxable premium for that insurance contract is allocated.

**STATE -** The term "state" includes any state of the United States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, the Northern Mariana Islands, the U.S. Virgin Islands, and American Samoa.

**SIGNATURE -**All signatures need to be wet, electronic, or digital. Stamped, typed, printed, and script font signatures are NOT acceptable.

 © All Rights Reserved

# POLICYHOLDER DISCLOSURE
# NOTICE OF TERRORISM INSURANCE COVERAGE
# (RIGHT TO PURCHASE COVERAGE)

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security, and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 80% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

## Acceptance or Rejection of Terrorism Insurance Coverage

| | |
|---|---|
| ☐ | I hereby elect to purchase terrorism coverage for prospective premium of $5,625.00 |
| ☐ | I hereby decline to purchase terrorism coverage for certified acts of terrorism. I understand that I will have no coverage for losses resulting from certified acts of terrorism |

| | | |
|---|---|---|
| | Romanov Group LLC, c/o David Goodrich | |
| Policyholder/Applicant's Signature | Account Name | |
| | | |
| Print Name | Date | Policy Number |

Copyright 2020 National Association of Insurance Commissioners 

STETSON
INSURANCE FUNDING

We are pleased to introduce you to Stetson Insurance Funding, LLC ("Stetson") an affiliate of Ryan Specialty Group that operates its premium finance business. Stetson will be providing an automated premium finance agreement for your clients' commercial insurance risks placed through RT Specialty.

Stetson has teamed up with FIRST Insurance Funding ("FIRST"), the largest premium finance company in North America. Under this collaboration, FIRST will be the lender, as listed on the premium finance agreement, and the loan will be serviced by FIRST. Stetson will be your main point of contact throughout the life of the loan and provide ongoing support to your agency.

## EASY SET UP FOR AGENTS TO OBTAIN FINANCING:

1. Receive an automated premium finance agreement with eligible commercial insurance risks placed through RT Specialty.
2. Make changes to the premium finance agreement by:
   - Visiting our website at www.stetsonfunding.com
   - Emailing us at quotes@stetsonfunding.com
   - Calling us at 1-866-856-1112
3. Down payment to be collected by the agent from the insured in good funds and sent to the General Agent or Carrier.
4. Return the signed premium finance agreement to agreements@stetsonfunding.com.
5. Stetson will finalize the loan and have funding issued for the amount financed.

We look forward to exceeding your premium financing expectations.

# IMPORTANT NOTICE:

**1. The insurance policy that you are applying to purchase is being issued by an insurer that is not licensed by the State of California. These companies are called "nonadmitted" or "surplus line" insurers.**

**2. The insurer is not subject to the financial solvency regulation and enforcement that apply to California licensed insurers.**

**3. The insurer does not participate in any of the insurance guarantee funds created by California law. Therefore, these funds will not pay your claims or protect your assets if the insurer becomes insolvent and is unable to make payments as promised.**

**4. The insurer should be licensed either as a foreign insurer in another state in the United States or as a non-United States (alien) insurer. You should ask questions of your insurance agent, broker, or "surplus line" broker or contact the California Department of Insurance at the toll-free number 1-800-927-4357 or internet website www.insurance.ca.gov. Ask whether or not the insurer is licensed as a foreign or non-United States (alien) insurer and for additional information about the insurer. You may also visit the NAIC's internet website at www.naic.org. The NAIC—the National Association of Insurance Commissioners—is the regulatory support organization created and governed by the chief insurance regulators in the United States.**

**5. Foreign insurers should be licensed by a state in the United States and you may contact that state's department of insurance to obtain more information about that insurer. You can find a link to each state from this NAIC internet website: https://naic.org/state_web_map.htm.**

**6. For non-United States (alien) insurers, the insurer should be licensed by a country outside of the United States and should be on the NAIC's International Insurers Department (IID) listing of approved nonadmitted non-United States insurers. Ask your agent, broker, or "surplus line" broker to obtain more information about that insurer.**

**7. California maintains a "List of Approved Surplus Line Insurers (LASLI)." Ask your agent or broker if the insurer is on that list, or view that list at the internet website of the California Department of Insurance: www.insurance.ca.gov/01-consumers/120-company/07-lasli/lasli.cfm.**

**8. If you, as the applicant, required that the insurance policy you have purchased be effective immediately, either because existing coverage was going to lapse within two business days or because you were required to have coverage within two business days, and you did not receive this disclosure form and a request for your signature until after coverage became effective, you have the right to cancel this policy within five days of receiving this disclosure. If you cancel coverage, the premium will be prorated and any broker's fee charged for this insurance will be returned to you.**

**Date: ______________________________**

**Insured: ___________________________**

**D-1 (Effective January 1, 2020)**

# INSTRUCTIONS

**SECTION 1:** Please provide the full name, as it is written on the individual's California license, of the individual who performed or supervised the diligent search. If the search was performed under the individual's license number, enter the individual's California license number in section (A) or if the individual was authorized as an endorsee under an organizational license, enter the name of the organization and its California license number in section (B).

**SECTION 3:** Please provide a complete response to section (A), and if applicable to section (B). Note: The Insurance Commissioner or his designee may require the surplus line broker to conduct additional searches among admitted insurers for similar placements in the future. (California Insurance Code section 1763[b]) An incomplete response will be tagged and may unnecessarily result in a request for a further search to be conducted.

- **SECTION 3(A):** To avoid misidentification among insurers with similar names, please provide the complete name of the admitted insurer as listed in the California Department of Insurance (CDI) Official Publication of Admitted Companies and the insurance company's National Association of Insurance Commissioners (NAIC) number. Please include Insurer contact name and telephone number or email address, or if a website based quoting platform was used, enter the website name.

  Please refer to the California Department of Insurance Official Publication of Admitted Companies.
  https://interactive.web.insurance.ca.gov/apex_extprd/f?p=144:1

- **SECTION 3(B):** The detailed explanation in section 3(B) must include a description of the steps the broker took to determine whether three insurers write the type of insurance or risk and the reasoning for the determination. A conclusory statement is insufficient.

**SIGNATURE:** The Surplus Line Association of California (SLA) will accept a wet signature or a digital and electronic signature from the California Secretary of State's Approved List of Digital Signature Certification Authorities. Please refer to the following link:

https://www.sos.ca.gov/administration/regulations/current-regulations/technology/digital-signatures/approved-certification-authorities/

**IMPORTANT:** Persons who are licensed only as an agent are authorized to offer risks only to admitted insurers for which they are appointed agents (California Insurance Code section 1704). Agents are not authorized to offer a risk to admitted insurers for which they are not appointed agents. A search which is limited to only those companies that have appointed the agent may not necessarily constitute a diligent search of the admitted market.

**WHAT TO FILE:** This report must be filed along with the Confidential Report of Surplus Line Placement. (SL-1 Form). File this Form with signature, and, only if applicable, the Addendum.

**WHERE TO FILE:** The SL-1 Form and this report are to be filed by the surplus line broker with SLA within 60 days of placement of coverage with non-admitted insurer(s).

**MULTIPLE LICENSEES CONDUCTING SEARCH:** If two or more licensees conduct a diligent search of admitted insurers, then each licensee must complete a Diligent Search Report (SL-2 Form). All such reports should be attached to the SL-1 Form.

Please refer to the **Coverage Code List** and **Export Code List** under Resources on the Learning Center for the full list of coverages and their respective codes.

https://learningcenter.slacal.com/resources/filing-requirements-and-procedures/coverage-codes
https://learningcenter.slacal.com/resources/filing-requirements-and-procedures/export-list-codes

The Surplus Line Association of California

# DILIGENT SEARCH REPORT (SL-2 FORM)

**①**

Before completing this report, please review the instructions on page 2.

I, ______________________________, hereby submit that I performed or supervised this diligent search, and I am:

***(A)*** licensed as an individual agent-broker for the applicable lines of insurance or surplus line broker under California license number ____________; **OR**

***(B)*** licensed and an endorsee on the license of ______________________________
(**Full Name of Organization**), California license number ______________________________

**②**

***(A)*** Name of Insured: Romanov Group LLC

***(B)*** Description of Risk: ______________________________
(e.g., Tattoo Parlor, Cannabis Dispensary, Vacant Building, **NOT TYPE OF COVERAGE**)

***(C)*** Type of Insurance or Coverage Code: ______________________________

**③**

Describe the diligent efforts made to place this coverage with admitted insurers by completing (A) or, if applicable, (B) below.

***(A)*** List the insurers admitted in California who actually write the type of insurance described on lines 2(B) and 2(C) to which you or someone under your supervision submitted the risk described in lines 2(A) through 2(C). Please complete **ALL** sections of the table below.

| | INSURER ① | INSURER ② | INSURER ③ |
|---|---|---|---|
| **NAIC ID** | | | |
| **MONTH, YEAR OF DECLINATION** | | | |
| **FULL NAME OF ADMITTED INSURER** | | | |
| CONTACT INFORMATION — **FULL NAME** | | | |
| **PHONE / EMAIL** | | | |
| ***OR* WEBSITE** | | | |

***(B)*** If you did not list at least three insurers in 3(A) above, describe in detail how you determined that fewer than **THREE** admitted insurers write the type of insurance described on lines 2(B) and 2(C). ______________________________

______________________________

**④**

Is the type of insurance you are reporting as identified in line 2(C) **private passenger automobile liability or health**? Yes ☐ No ☐

If you answered "yes," please complete the Diligent Search Report Addendum.

The undersigned licensee hereby certifies that this report is true and correct, and that this risk is not being placed with a non-admitted insurer for the sole purpose of securing a rate or premium lower than the lowest rate or premium available from an admitted insurer.

______________________________ (Signature of Licensee Named on Line 1)

______________________________ (Date)

## DILIGENT SEARCH REPORT (SL-2 FORM) ADDENDUM

## PRIVATE PASSENGER AUTOMOBILE LIABILITY INSURANCE COVERAGE OR HEALTH INSURANCE COVERAGE

1. If **Private Passenger Automobile Liability Insurance** is identified on line 2(C), complete the following:

(A) Does the insured qualify as a "Good Driver" under Section 1861.025 of the California Insurance Code?
https://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?lawCode=INS&sectionNum=1861.025.

**(CHECK ONE) YES** ☐ **NO** ☐

(B) Does the coverage that you have placed include, in whole or in part, the limits of coverage provided under the California Automobile Assigned Risk Plan (CAARP)?

**(CHECK ONE) YES** ☐ **NO** ☐

If YES, has this risk been submitted to and found to be ineligible by CAARP?

**(CHECK ONE) YES** ☐ **NO** ☐

If your answer is NO, this coverage cannot be placed with a non-admitted insurer.
(See California Insurance Code section 1763.5)
https://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?lawCode=INS&sectionNum=1763.5.

2. If **Health Insurance** is identified on line 2(C), does the insured qualify as a "Small Employer" under

California Insurance Code section 10700(x)?
https://leginfo.legislature.ca.gov/faces/codes_displayText.xhtml?lawCode=INS&division=2.&title=&part=2.&chapter=8.&article=1.

**(CHECK ONE) YES** ☐ **NO** ☐

# EXHIBIT 3

RYAN® TURNER SPECIALTY

RT Specialty
540 West Madison St
9th Floor
Chicago, IL 60661
Tom Mullins
312-878-8318

# Insurance Proposal

**August 13, 2026**

**Trustee Insurance Agency**
Attn: Jessica Cox
PO Box 190 Vicksburg, MI 49097

**Applicant:** Romanov Group LLC
C/O David Goodrich, 520 Newport Center Dr #480
Newport Beach, CA 92660

**Submission #:** APP89796289
**Policy Period:** 08/13/2026 12:01 AM To 08/13/2027 12:01 AM
**Coverage:** Property
**Issuing Company:** Homeland Insurance Company of New York

---

**CALIFORNIA SHORT RATE CANCELLATION PENALTY DISCLOSURE**

Please be advised that if you request cancellation of your policy prior to the expiration, the policy may be cancelled at a rate less than pro rata.

Please refer to your policy for specific terms and conditions.

RYAN® TURNER SPECIALTY

RT Specialty
540 West Madison St
9th Floor
Chicago, IL 60661
Tom Mullins
312-878-8318

# Insurance Proposal

**August 13, 2026**

**Trustee Insurance Agency**
Attn: Jessica Cox
PO Box 190 Vicksburg, MI 49097

| | |
|---|---|
| **Applicant:** | Romanov Group LLC<br>C/O David Goodrich, 520 Newport Center Dr #480<br>Newport Beach, CA 92660 |
| **Submission #:** | APP89796289 |
| **Policy Period:** | 08/13/2026 12:01 AM To 08/13/2027 12:01 AM |
| **Coverage:** | Property |
| **Issuing Company:** | Homeland Insurance Company of New York |

---

We are pleased to submit our proposal for the above captioned applicant.

Please read the attached quote carefully as coverage offered may be more limited than coverage requested.

Note :

Minimum earned premium may apply to this policy. See attached carrier quote for specifics. Please note that all fees are fully earned at inception.

TRIA coverage if applicable is offered on the attached carrier's quote.

Please review any minimum and deposit, audit, and/or cancellation provisions on the attached carrier quote for details regarding possible return premiums and additional premium charges.

I look forward to hearing from you, and please call if you have any questions.

Thank you for your business.

Regards,

Tom Mullins
President
RT Specialty
Tom.Mullins@rtspecialty.com
312-878-8318

Kevin Verkler
Vice President
RT Specialty
kevin.verkler@rtspecialty.com
312-761-1053

RYAN® TURNER SPECIALTY

RT Specialty
540 West Madison St
9th Floor
Chicago, IL 60661
Tom Mullins
312-878-8318

# Insurance Proposal

## Cost Summary

| | |
|---|---|
| Property Premium | $30,000.00 |
| CA Surplus Lines Tax | $900.00 |
| CA Stamp Fee | $54.00 |
| Policy Fee | $1,000.00 |
| **Total Policy Cost** | **$31,954.00** |

**Minimum Earned**

Note: There may be a minimum earned on this policy. Please refer to the carrier quote for more details on the minimum earned percentage.

**Agent Commission: 10.00%**

### Disclosures

RT Specialty is typically compensated through commission from the insurer for the placement of policies in most transactions. The amount of the commission varies by insurance line and by carrier. RT Specialty might also receive additional compensation. In order to place the insurance requested we may charge a reasonable fee for additional services such as performing a risk analysis, comparing policies, processing submissions, communication expenses, inspections, working with underwriters on the coverage proposal, issuing policies, or servicing the policy after issuance. Any fees charged are fully earned at inception of the policy. Third-party inspection or other fees may be separately itemized upon request. Our fees are applied to new policies, renewal policies, and endorsements. Fees applicable to each renewal and endorsement will be set forth in the quotes. It is the insurance carrier's decision whether to offer the insurance quoted, and your client's decision whether to accept the quote. Our fee is not imposed by state law or the Insurer.

Depending upon the Insurer involved with your placement, we might also have an agreement with the Insurer that we are proposing for this placement that might pay us future additional compensation This compensation could be based on formulas that consider the volume of business placed with the Insurer, the profitability of that business, how much of the business is retained for the Insurer's account each year, and potentially other factors. The agreements frequently consider total eligible premium from all clients placed during a calendar year and any incentive or contingent compensation is often received at a future date. Because of variables in these agreements, we often do not have an accurate means at the time of placement to determine the amount of any additional compensation that might be attributable to any single placement. You, as the retail broker with the direct relationship with the Insured, must comply with all applicable laws and regulations related to disclosure of and consent and agreement to, compensation, and informing the Insured that it may request more information about producer or broker compensation that might be paid in connection with the Insured's placement. If we request a copy of any legally required insured consent or agreement, you will provide us with a copy. If you need additional information about the compensation arrangements for services provided by RT Specialty affiliates, please contact your RT Specialty representative.

RT Specialty is a division of RSG Specialty, LLC. RSG Specialty, LLC is a Delaware limited liability company and a subsidiary of Ryan Specialty, LLC. In California: RSG Specialty Insurance Services, LLC (License # 0G97516).

RT Specialty
540 West Madison St
9th Floor
Chicago, IL 60661
Tom Mullins
312-878-8318

# Insurance Proposal

## Subjectivities

- Signed and completed Acord Application
- Due Diligence Forms (if required by state - Non-Admitted Only)
- Signed TRIA form if insured is accepting or rejecting terrorism coverage
- This quote is subject to receiving currently valued, acceptable loss runs for the last 5 policy terms prior to binding.
- Signed and completed Supplemental Application
- A written request to bind coverage is required prior to binding
- Please provide Inspection Contact Name and Phone Number at binding (email if available). Coverage is subject to a satisfactory inspection.
- Subjectivities & conditions per the Intact quote letter.

**The Subjectivities outlined above are required prior to binding. Please forward all requested information with your bind request. No coverage is considered bound until confirmed in writing and all subjectivities have been addressed.**

RT Specialty
540 West Madison St
9th Floor
Chicago, IL 60661
Tom Mullins
312-878-8318

# Insurance Proposal

---

## NOTICE

## Occurrence Limit of Liability

## (OLLE) Scheduled Limits

Blanket coverage for first-party property insurance risks has become increasingly difficult to secure and often is not available regardless of price.

Please note that your quote may not provide coverage on a blanket basis and, based on current market conditions, a blanket coverage option might not be available. Any reference(s) to an Occurrence Limit of Liability Endorsement (OLLE), margin clause, maximum amount payable, and/or scheduled limits indicate that blanket coverage is not provided. Instead, the amount of recovery afforded by the policy is limited in some respect to the amount(s) set forth on the Statement of Values (SOV) provided to the insurer. This potentially can materially reduce the insured's recovery in the event of a loss as compared to blanket coverage. Additionally, the policy language for these clauses may vary by insurer and some insurers limit the amount recoverable for extensions of coverage, additional coverages, and additional covered property to the values as shown on the SOV.

Please review this quote very carefully to determine if coverage is being offered or provided on a blanket, or some other more limited, basis.

As such, we strongly recommend that you confirm that the insured is in agreement that they have provided full and accurate amounts for the values set forth on the SOV. RT Specialty expressly disclaims any responsibility for the accuracy or adequacy of the values provided on an SOV. We also note that all decisions concerning coverage and the application of the terms, provisions, conditions, limitations or exclusions of the policy to any claim are made exclusively by the insurers.

intact INSURANCE specialty property

# EXCESS PROPERTY QUOTATION

**Date:** August 13, 2026

**Broker:** **Kevin Verkler**
RT Specialty
*Chicago, IL*

**Policy Period:** From: 9/1/2026
To: 9/1/2027

**Insured:** **Romanov Group, LLC**

18180-18380 Yorba Linda Blvd
Los Angeles CA 92886

**Excess Insurance Company:** Homeland Insurance Company of New York
Non-admitted

**Premium:**

| **Coverages** | **Coverage Premium** |
|---|---|
| Excess Property Coverages: | **$ 30,000** |
| Terrorism Coverage | **$ 3,000** |
| Total Premium | **$ 33,000** |

Minimum Earned Premium: 35% of the premium is earned at inception. **$ 11,550**

## ** NO FLAT CANCELLATIONS **

**The premium amount in this quote does not include any taxes and fees. Homeland Insurance Company of New York is a non-admitted company in the home state of the insured. Note that as the producer of this business, you are solely responsible for compliance with all surplus lines regulations including, but not limited to, licensing, collection and remittance of applicable taxes and/or fees, submission of policies to any state stamping offices, attaching required notices to the application and/or policy, and ensuring that proper due diligence with respect to authorized company declinations has been conducted and documented to the extent required by state regulations.**

**Surplus Lines Taxes to be filed in the insured's Home State of : CA**

Intact Insurance is the marketing brand for the insurance company subsidiaries of Intact Insurance Group USA LLC, including Atlantic Specialty Insurance Company, a New York insurer, Homeland Insurance Company of New York, a New York insurer, Homeland Insurance Company of Delaware, a Delaware insurer. Each of these insurers maintains its principal place of business at 605 Highway 169 N, Plymouth, MN 55441.

intact INSURANCE specialty property

# EXCESS PROPERTY QUOTATION

**Thank you for the opportunity to provide you with this quote.**
**We are able to quote coverage under the terms and conditions as follows.**

**Excess Limit of Liability and Participation:**
$19,630,200 (being 100.0% part of $19,630,200) Per occurrence

**Attachment Point:**
$10,000,000 Per occurrence

**Sublimits:**
***As provided by the primary policy form.***

**Reported Values:** $29,630,200

**Valuation:**
Property insured under the Policy will be valued according to the terms of the Primary Underlying Insurance Policy.

**Cancellation:**
Subject to any state regulations or statutes which govern the notice period, the cancellation notice period is 30 days. The cancellation notice period for nonpayment of premium is 10 days.

intact INSURANCE specialty property

# EXCESS PROPERTY QUOTATION

**Items of Insurance Covered:**

Real Property as shown in the reported values provided by the Insured at the inception of this Policy or added by endorsement during the period of this Policy.

**Perils Insured:**

Direct Physical Loss or Damage; Excluding Flood and Earthquake

**Exclusions:**

- ☑ Earth Movement
- ☑ Earthquake
- ☑ Cyber Vandalism / Denial of Service Attack
- ☑ Fungus, Wet Rot, Dry Rot, Virus or Bacteria
- ☑ Equipment Breakdown
- ☑ Asbestos removal
- ☑ Water
- ☑ Flood
- ☑ Nuclear Hazard
- ☑ Chemical or Biological Materials
- ☑ Terrorism (If Not Purchased)
- ☑ Electronic Data
- ☐ Windstorm/Hail
- ☐ Named Storm
- ☑ Ordinance or Law
- ☑ Contaminants or Pollutants
- ☑ Costs, Expenses, Fines or Penalties Incurred by Order of Authority

**Warranties:**

***** All Warranties, Conditions, Subjectivities, etc are as per the Lexington primary.***

Intact Insurance is the marketing brand for the insurance company subsidiaries of Intact Insurance Group USA LLC, including Atlantic Specialty Insurance Company, a New York insurer, Homeland Insurance Company of New York, a New York insurer, Homeland Insurance Company of Delaware, a Delaware insurer. Each of these insurers maintains its principal place of business at 605 Highway 169 N, Plymouth, MN 55441.

intact INSURANCE specialty property

# EXCESS PROPERTY QUOTATION

**Conditions:**

- At the time of binding, please provide this Company with the following:
  - A copy of the primary binder;
  - The completed and signed SURPLUS LINES PRODUCER CERTIFICATION form;
  - The completed and signed Terrorism Coverage Election Form.
- You must have this Company's permission to bind coverage.
- This Quote is valid until the proposed effective date or for 30 days if none is specified.
- Recovery will be limited to the values shown on the application. Refer to the Occurrence Limit of Liability Endorsement attached to this Quote.
- Newly acquired properties must have the underwriter's prior approval.
- This excess insurance shall not be considered other insurance for the purposes of any "Other Insurance" clause in the primary policy.
- Any coinsurance clause, references to pro rata liability, pro rata distribution or any other apportionment clause will be deleted from the primary policy.
- **Salvage or Recoveries:** When, in connection with any loss under this Policy, any salvage or recovery is received after loss settlement, the loss will be calculated on the basis on which it would have been settled had the amount of salvage or recovery been known at the time the loss was originally determined. Any amounts thus found to be due either party from the other will be paid promptly. The expense of all proceedings necessary to such recoveries will be apportioned between the interests concerned in the ratio of their respective recoveries as finally settled. If there should be no recovery and proceedings are conducted solely by this Company, this Company will pay such expenses.

  Subject to Intact Follow Form and Endorsements pending review and approval of the primary policy form.

**Underwriter Comments:**

Issuance of the policy is contingent upon the underwriter's receipt of all underlying policy numbers and participation

Intact Insurance is the marketing brand for the insurance company subsidiaries of Intact Insurance Group USA LLC, including Atlantic Specialty Insurance Company, a New York insurer, Homeland Insurance Company of New York, a New York insurer, Homeland Insurance Company of Delaware, a Delaware insurer. Each of these insurers maintains its principal place of business at 605 Highway 169 N, Plymouth, MN 55441.

intact INSURANCE specialty property

# EXCESS PROPERTY QUOTATION

**Forms and Endorsements:**

| | | |
|---|---|---|
| X | Excess Property Policy Declarations | OBSP 100 04 16 |
| X | Excess Property Policy – Following Form | OBSP 001 04 24 |
| X | Excess Property Conditions | OBSP 002 04 16 |
| X | Additional Interests Endorsement | OBSP 241 04 16 |
| X | Claim Reporting Options | PHN 049 OBSP 04 16 |
| x | Loss Occurrence Limit of Liability – Reported Value | OBSP 204 04 24 |
| X | Ordinance or Law Exclusion | OBSP 206 01 19 |
| X | Permission to Add Locations | OBSP 238 04 16 |
| X | Service of Suit Endorsement | OB IL 001 10 15 |
| X | U.S. Treasury OFAC Advisory Notice | IL P 001 01 04 |
| X | Policyholder Disclosure Notice of Terrorism Insurance Coverage | PHN 001 IL 12 20 |
| X | Policyholder Disclosure Notice of Terrorism Insurance Coverage (If Terrorism Insurance Coverage is Rejected) | PHN 002 IL 12 20 |
| X | Exclusion of Certified Acts of Terrorism (If Terrorism Insurance Coverage is Rejected) | OBSP 219 09 15 |
| X | Policyholder Disclosure Notice of Terrorism Insurance Coverage (If Terrorism Insurance Coverage is Accepted) | PHN 003 IL 12 20 |
| X | Cap on Losses from Certified Acts of Terrorism (If Terrorism Insurance Coverage is Accepted) | OBSP 218 09 15 |
| X | Required state amendatory endorsements and notices | |
| X | Policyholder State Notices | PHN 024 OBSP 09 15 |

intact INSURANCE specialty property

# EXCESS PROPERTY POLICY FORMS

## IMPORTANT NOTICE

We are pleased to offer to issue this excess property policy under our new Excess Property Policy - Following Form, endorsements to the new form, and new Excess Property Conditions. These revised forms include modernized policy language, making them more consistent with underlying property forms. Revisions to the forms also reinforce coverage intent. Note, however, that the change in forms may impact rights, duties and coverages under the excess property policy. **You should read all policy forms, including the expiring policy forms, for complete information on the coverages or conditions the policy forms provide.** As always, please contact us with any questions about the attached insurance forms or renewal of this excess property policy.

**Insured Name and Address:** **Policy/Quote Number:** 0

Romanov Group, LLC
18180-18380 Yorba Linda
Blvd
Los Angeles , CA 92886

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act (the Act), as amended, you have a right to purchase insurance coverage for losses resulting from acts of terrorism. *As defined in Section 102(1) of the Act:* The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security, and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 80%, BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM TO BE CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

**SELECTION OR REJECTION OF TERRORISM INSURANCE COVERAGE**

The prospective premium required for your terrorism coverage is: $3,000

If you wish to reject this offer of coverage, you should check the box below, sign this notice and send it to your agent.

An **exclusion** of terrorism losses, as defined by the Act, will then be made part of your policy.

| | |
|---|---|
| | I hereby reject the offer of terrorism coverage. I understand that I will have no coverage for losses arising from acts of terrorism, as defined in the act. |

**If your policy includes Property Coverage in one or more of these states: CA, GA, HI, IA, IL, MA, ME, MO, NC, NJ, NY, OR, RI, WA, WI, or WV; the following statement applies:**

The terrorism exclusion makes an exception for (and thereby continues your coverage for) property fire losses resulting from an act of terrorism. Therefore, if you reject the offer of terrorism coverage, that rejection does not apply to fire losses resulting from an act of terrorism - the coverage in your policy for such fire losses will continue. If such a loss occurs, and is certified under the Act, the loss will be reimbursed by the United States government under the formula detailed above.

The portion of your policy premium attributable to terrorism (fire only) coverage in all of the states listed above, in which your policy provides property coverage, is $ Included. This amount is included in your policy premium and cannot be rejected.

Contains copyrighted material of National Association Of Insurance Commissioners with its permission.

**If your policy includes Inland Marine Coverage in one or more of these states: CA, ME, MO, OR or WI, the following statement applies:**

The terrorism exclusion makes an exception for (and thereby continues your coverage for) direct property damage fire losses resulting from an act of terrorism. Therefore, if you reject the offer of terrorism coverage, that rejection does not apply to direct property damage fire losses resulting from an act of terrorism - the coverage in your policy for such fire losses will continue. If such a loss occurs, and is certified under the Act, the loss will be reimbursed by the United States government under the formula detailed above.

The portion of your policy premium attributable to coverage for direct property damage from fire resulting from terrorism in all of the states listed above, in which your policy provides Inland Marine coverage, is $ Included. This amount is included in your policy premium and cannot be rejected.

| | |
|---|---|
| | Homeland Insurance Company of New York |
| Policyholder/Applicant's Signature | Insurance Company |
| | |
| Print Name | Date |

If you have any questions about this notice, please contact your agent.


Contains copyrighted material of National Association Of Insurance Commissioners with its permission.

intact INSURANCE specialty property

# Surplus Lines Producer Certification

*Important: This agreement must be completed by the broker responsible for the surplus lines tax filings.*

**Insured Information**

| | |
|---|---|
| Insured Name: | Romanov Group, LLC |
| Insured Address: | , 18180-18380 Yorba Linda Blvd, Los Angeles , CA 92886 |
| Policy Number: | 0 |
| Writing Company: | Homeland Insurance Company of New York |
| Producer Name: | Kevin Verkler |
| Producer Address: | RT Specialty, Chicago, IL |

The Insured referenced above is domiciled in the state of: CA To ensure compliance with laws and regulations regarding Surplus Lines business, we are furnishing you with the name, address and license number for the Surplus Lines broker who will arrange for affidavit filings, payment of applicable taxes and fees, and compliance with any other requirements, with respect to the above-referenced policy.

**Broker Information**

| | |
|---|---|
| Licensed Surplus Lines Broker Name: | |
| Surplus Lines Broker License Number: | |
| Surplus Lines Broker Address: | |
| NJ Transaction Number: (NJ Domiciled Risks Only) | |

Licensed Broker's Signature: ____________________ Date: __________

**Please return this form to your underwriter.**

POLICY NUMBER:
NAMED INSURED:
ISSUE DATE:
EFFECTIVE DATE:

COMMERCIAL EXCESS PROPERTY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS OCCURRENCE LIMIT OF LIABILITY ENDORSEMENT

This endorsement modifies insurance provided under the following:

EXCESS PROPERTY POLICY – FOLLOWING FORM

SCHEDULE

| | | | | |
|---|---|---|---|---|
| **Excess Insurance Company:** | | | | |
| **Policy Number:** | | | | |
| **Layer** | | | **Company Excess Participation Percentage** | **Company Excess Limit of Liability** |
| $19,630,200 | **excess of** | $10,000,000 | 100.00% | $19,630,200 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. If the information above conflicts with any information shown in the Declarations, the information in the Declarations will supersede the above information. | | | | |

The following replaces Paragraph **2.** of Paragraph **A. Excess Limit of Liability and Participation** of Section **III**.
**LIMITS OF LIABILITY:**

**2.** The Company Excess Limit of Liability shown in the SCHEDULE above is the maximum available limit of this Company's liability applicable to each "**loss occurrence**". Notwithstanding any other terms and conditions of this Policy, in no event will the liability of this Company exceed this limit regardless of the number or type of items of insurance involved or affected or Covered Excess Locations shown in the Declarations which had the loss.

Subject to the paragraph above, the limit of recovery in any one **"loss occurrence"** under this Policy will not exceed the least of the following:

**a.** This Company's proportionate share (shown as the Company Excess Participation Percentage in the SCHEDULE above) of:

**(1)** The actual adjusted amount of loss; less

**(2)** The "**underlying limits**" and applicable deductibles;

**b.** This Company's proportionate share (shown as the Company Excess Participation Percentage in the SCHEDULE above) of:

**(1)** The reported value, as shown on the most recent reported values provided by the Insured and on file with this Company, for each scheduled item of insurance insured at the Covered Excess Location shown in the Declarations which had the loss; less

**(2)** The **"underlying limits"** and applicable deductibles

If no value, item or location is reported to this Company then there is no coverage; or

**c.** The Company Excess Limit of Liability shown in the SCHEDULE above.

If the **"loss occurrence"** involves more than one Covered Excess Location or scheduled item of insurance, the liability of this Company will be determined separately for each individually scheduled item of insurance.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**


Contains copyrighted material of Insurance Services Office, Inc. with its permission
Copyright 2024, OneBeacon Insurance Group LLC

STETSON
INSURANCE FUNDING

We are pleased to introduce you to Stetson Insurance Funding, LLC ("Stetson") an affiliate of Ryan Specialty Group that operates its premium finance business. Stetson will be providing an automated premium finance agreement for your clients' commercial insurance risks placed through RT Specialty.

Stetson has teamed up with FIRST Insurance Funding ("FIRST"), the largest premium finance company in North America. Under this collaboration, FIRST will be the lender, as listed on the premium finance agreement, and the loan will be serviced by FIRST. Stetson will be your main point of contact throughout the life of the loan and provide ongoing support to your agency.

## EASY SET UP FOR AGENTS TO OBTAIN FINANCING:

1. Receive an automated premium finance agreement with eligible commercial insurance risks placed through RT Specialty.
2. Make changes to the premium finance agreement by:
   - Visiting our website at www.stetsonfunding.com
   - Emailing us at quotes@stetsonfunding.com
   - Calling us at 1-866-856-1112
3. Down payment to be collected by the agent from the insured in good funds and sent to the General Agent or Carrier.
4. Return the signed premium finance agreement to agreements@stetsonfunding.com.
5. Stetson will finalize the loan and have funding issued for the amount financed.

We look forward to exceeding your premium financing expectations.

# IMPORTANT NOTICE:

**1. The insurance policy that you are applying to purchase is being issued by an insurer that is not licensed by the State of California. These companies are called "nonadmitted" or "surplus line" insurers.**

**2. The insurer is not subject to the financial solvency regulation and enforcement that apply to California licensed insurers.**

**3. The insurer does not participate in any of the insurance guarantee funds created by California law. Therefore, these funds will not pay your claims or protect your assets if the insurer becomes insolvent and is unable to make payments as promised.**

**4. The insurer should be licensed either as a foreign insurer in another state in the United States or as a non-United States (alien) insurer. You should ask questions of your insurance agent, broker, or "surplus line" broker or contact the California Department of Insurance at the toll-free number 1-800-927-4357 or internet website www.insurance.ca.gov. Ask whether or not the insurer is licensed as a foreign or non-United States (alien) insurer and for additional information about the insurer. You may also visit the NAIC's internet website at www.naic.org. The NAIC—the National Association of Insurance Commissioners—is the regulatory support organization created and governed by the chief insurance regulators in the United States.**

**5. Foreign insurers should be licensed by a state in the United States and you may contact that state's department of insurance to obtain more information about that insurer. You can find a link to each state from this NAIC internet website: https://naic.org/state_web_map.htm.**

**6. For non-United States (alien) insurers, the insurer should be licensed by a country outside of the United States and should be on the NAIC's International Insurers Department (IID) listing of approved nonadmitted non-United States insurers. Ask your agent, broker, or "surplus line" broker to obtain more information about that insurer.**

**7. California maintains a "List of Approved Surplus Line Insurers (LASLI)." Ask your agent or broker if the insurer is on that list, or view that list at the internet website of the California Department of Insurance: www.insurance.ca.gov/01-consumers/120-company/07-lasli/lasli.cfm.**

**8. If you, as the applicant, required that the insurance policy you have purchased be effective immediately, either because existing coverage was going to lapse within two business days or because you were required to have coverage within two business days, and you did not receive this disclosure form and a request for your signature until after coverage became effective, you have the right to cancel this policy within five days of receiving this disclosure. If you cancel coverage, the premium will be prorated and any broker's fee charged for this insurance will be returned to you.**

**Date: ______________________________**

**Insured: ___________________________**

**D-1 (Effective January 1, 2020)**

# INSTRUCTIONS

**SECTION 1:** Please provide the full name, as it is written on the individual's California license, of the individual who performed or supervised the diligent search. If the search was performed under the individual's license number, enter the individual's California license number in section (A) or if the individual was authorized as an endorsee under an organizational license, enter the name of the organization and its California license number in section (B).

**SECTION 3:** Please provide a complete response to section (A), and if applicable to section (B). Note: The Insurance Commissioner or his designee may require the surplus line broker to conduct additional searches among admitted insurers for similar placements in the future. (California Insurance Code section 1763[b]) An incomplete response will be tagged and may unnecessarily result in a request for a further search to be conducted.

- **SECTION 3(A):** To avoid misidentification among insurers with similar names, please provide the complete name of the admitted insurer as listed in the California Department of Insurance (CDI) Official Publication of Admitted Companies and the insurance company's National Association of Insurance Commissioners (NAIC) number. Please include Insurer contact name and telephone number or email address, or if a website based quoting platform was used, enter the website name.

  Please refer to the California Department of Insurance Official Publication of Admitted Companies.
  https://interactive.web.insurance.ca.gov/apex_extprd/f?p=144:1

- **SECTION 3(B):** The detailed explanation in section 3(B) must include a description of the steps the broker took to determine whether three insurers write the type of insurance or risk and the reasoning for the determination. A conclusory statement is insufficient.

**SIGNATURE:** The Surplus Line Association of California (SLA) will accept a wet signature or a digital and electronic signature from the California Secretary of State's Approved List of Digital Signature Certification Authorities. Please refer to the following link:

https://www.sos.ca.gov/administration/regulations/current-regulations/technology/digital-signatures/approved-certification-authorities/

**IMPORTANT:** Persons who are licensed only as an agent are authorized to offer risks only to admitted insurers for which they are appointed agents (California Insurance Code section 1704). Agents are not authorized to offer a risk to admitted insurers for which they are not appointed agents. A search which is limited to only those companies that have appointed the agent may not necessarily constitute a diligent search of the admitted market.

**WHAT TO FILE:** This report must be filed along with the Confidential Report of Surplus Line Placement. (SL-1 Form). File this Form with signature, and, only if applicable, the Addendum.

**WHERE TO FILE:** The SL-1 Form and this report are to be filed by the surplus line broker with SLA within 60 days of placement of coverage with non-admitted insurer(s).

**MULTIPLE LICENSEES CONDUCTING SEARCH:** If two or more licensees conduct a diligent search of admitted insurers, then each licensee must complete a Diligent Search Report (SL-2 Form). All such reports should be attached to the SL-1 Form.

Please refer to the **Coverage Code List** and **Export Code List** under Resources on the Learning Center for the full list of coverages and their respective codes.

https://learningcenter.slacal.com/resources/filing-requirements-and-procedures/coverage-codes
https://learningcenter.slacal.com/resources/filing-requirements-and-procedures/export-list-codes

The Surplus Line Association of California

# DILIGENT SEARCH REPORT (SL-2 FORM)

①

Before completing this report, please review the instructions on page 2.

I, ______________________________________, hereby submit that I performed or supervised this diligent search, and I am:

***(A)*** licensed as an individual agent-broker for the applicable lines of insurance or surplus line broker under California license number ______________; **OR**

***(B)*** licensed and an endorsee on the license of ______________________________ (**Full Name of Organization**), California license number ______________________________

②

***(A)*** Name of Insured: Romanov Group LLC

***(B)*** Description of Risk: ______________________________
(e.g., Tattoo Parlor, Cannabis Dispensary, Vacant Building, **NOT TYPE OF COVERAGE**)

***(C)*** Type of Insurance or Coverage Code: ______________________________

③

Describe the diligent efforts made to place this coverage with admitted insurers by completing (A) or, if applicable, (B) below.

***(A)*** List the insurers admitted in California who actually write the type of insurance described on lines 2(B) and 2(C) to which you or someone under your supervision submitted the risk described in lines 2(A) through 2(C). Please complete **ALL** sections of the table below.

| | INSURER ① | INSURER ② | INSURER ③ |
|---|---|---|---|
| **NAIC ID** | | | |
| **MONTH, YEAR OF DECLINATION** | | | |
| **FULL NAME OF ADMITTED INSURER** | | | |
| CONTACT INFORMATION **FULL NAME** | | | |
| **PHONE / EMAIL** | | | |
| ***OR* WEBSITE** | | | |

***(B)*** If you did not list at least three insurers in 3(A) above, describe in detail how you determined that fewer than **THREE** admitted insurers write the type of insurance described on lines 2(B) and 2(C). ______________________________

④

Is the type of insurance you are reporting as identified in line 2(C) **private passenger automobile liability or health**? Yes ☐ No ☐

If you answered "yes," please complete the Diligent Search Report Addendum.

The undersigned licensee hereby certifies that this report is true and correct, and that this risk is not being placed with a non-admitted insurer for the sole purpose of securing a rate or premium lower than the lowest rate or premium available from an admitted insurer.

______________________________ (Signature of Licensee Named on Line 1)

______________________________ (Date)

## DILIGENT SEARCH REPORT (SL-2 FORM) ADDENDUM

## PRIVATE PASSENGER AUTOMOBILE LIABILITY INSURANCE COVERAGE OR HEALTH INSURANCE COVERAGE

1. If **Private Passenger Automobile Liability Insurance** is identified on line 2(C), complete the following:

   (A) Does the insured qualify as a "Good Driver" under Section 1861.025 of the California Insurance Code?
   https://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?lawCode=INS&sectionNum=1861.025.

   **(CHECK ONE) YES** ☐ **NO** ☐

   (B) Does the coverage that you have placed include, in whole or in part, the limits of coverage provided under the California Automobile Assigned Risk Plan (CAARP)?

   **(CHECK ONE) YES** ☐ **NO** ☐

   If YES, has this risk been submitted to and found to be ineligible by CAARP?

   **(CHECK ONE) YES** ☐ **NO** ☐

   If your answer is NO, this coverage cannot be placed with a non-admitted insurer.
   (See California Insurance Code section 1763.5)
   https://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?lawCode=INS&sectionNum=1763.5.

2. If **Health Insurance** is identified on line 2(C), does the insured qualify as a "Small Employer" under

   California Insurance Code section 10700(x)?
   https://leginfo.legislature.ca.gov/faces/codes_displayText.xhtml?lawCode=INS&division=2.&title=&part=2.&chapter=8.&article=1.

   **(CHECK ONE) YES** ☐ **NO** ☐

# EXHIBIT 4

STETSON
INSURANCE FUNDING

We are pleased to introduce you to Stetson Insurance Funding, LLC ("Stetson") an affiliate of Ryan Specialty that facilitates its premium finance requests.

Stetson has teamed up with FIRST Insurance Funding ("FIRST"), one of the largest premium finance companies in North America. Under this collaboration*, FIRST is the lender, as listed on the Premium Finance Agreement, and the loan will be serviced by FIRST.

Stetson will be your Agency's primary point of contact throughout the life of the loan and provide ongoing support to your Agency.

## GUIDELINES TO OBTAIN FINANCING WITH STETSON:

1. **Request changes and provide updates to the premium finance agreement by:**
   - Visiting our website at www.stetsonfunding.com
   - Emailing us at quotes@stetsonfunding.com
   - Calling us at 1-866-856-1112
2. **Loan Down Payment:**
   - **Commercial Lines** – Your Agency collects the down payment from the Insured and sends it to the General Agent or Carrier.
   - **Personal Lines** – The Insured can pay the down payment to your Agency or to FIRST via electronic check by calling 1-800-837-2513; please reference the quote number on the attached Premium Finance Agreement.
3. **Return the signed Premium Finance Agreement, along with the ACH Authorization for Direct Debit, if applicable, to agreements@stetsonfunding.com**
   - FOR PERSONAL LINES ONLY: Stetson must also receive the Truth-In-Lending Disclosures page. If multiple borrowers are listed on the Premium Finance Agreement, eachborrower must sign the Premium Finance Agreement and initial the Truth-In-Lending Disclosures page.
4. **Stetson coordinates with FIRST to finalize the loan and fund accordingly. Note that all loan installment payments are due to FIRST.**

**Thank you for your business.**
**We look forward to exceeding your premium finance expectations!**

**This information does not apply to premium finance requests submitted directly to FIRST.*

INTERACTIVE VOICE RESPONSE: 866.373.3866 | MAIN: 866.856.1112
CUSTOMERSERVICE@STETSONFUNDING.COM | STETSONFUNDING.COM

**LENDER:**
FIRST Insurance Funding
450 Skokie Blvd, Ste 1000
Northbrook, IL, 60062-7917
P:(800) 837-3707, F:(800) 837-3709

# PREMIUM FINANCE AGREEMENT

☐ Personal ☑ Commercial ☐ Additional Premium

Stetson Insurance Funding, LLC
10150 York Road, Fifth Floor
Hunt Valley, MD, 21030
P: (866) 373-3866

STETSON INSURANCE FUNDING

**Quote #: 102101334**

| INSURED/BORROWER Customer ID: N/A | AGENT or BROKER AGT43542 |
|---|---|
| (Name and Address as shown on Policy)<br>Romanov Group LLC - DIP<br>18180 Yorba Linda Blvd<br>Yorba Linda, CA 92886-3901 | (Name and Business Address)<br>Trustee Insurance Agency<br>PO Box 190<br>Vicksburg, MI 49097 |

## LOAN DISCLOSURE

| Total Premiums, Taxes, and Fees | Down Payment | Unpaid Balance | Documentary Stamp Tax (only applicable in Florida) | Amount Financed (amount of credit provided on your behalf) | FINANCE CHARGE (dollar amount the credit will cost you) | Total of Payments (amount paid after making all scheduled payments) | ANNUAL PERCENTAGE RATE (cost of credit as a yearly rate) |
|---|---|---|---|---|---|---|---|
| 163,248.79 | 45,807.20 | 117,441.59 | 0.00 | 117,441.59 | 7,639.11 | 125,080.70 | 13.950 % |

***YOUR PAYMENT SCHEDULE WILL BE:*** ***Mail Payments to: FIRST Insurance Funding, PO Box 7000, Carol Stream, IL 60197-7000***

| Number of Payments | Amount of Each Payment | **First Installment Due** | 10/5/2026 |
|---|---|---|---|
| 10 | 12,508.07 | **Installment Due Dates** | 5th (Monthly) |

Certain information contained in the Loan Disclosure section may change in accordance with Section 19 of this Agreement.

**INSURED'S AGREEMENT:**

**1. SECURITY INTEREST.** INSURED/BORROWER ("Insured") grants and assigns FIRST Insurance Funding, A Division of Lake Forest Bank & Trust Company, N.A. ("LENDER") a first priority lien on and security interest in the financed policies and any additional premium required under the financed policies listed in the Schedule of Policies, including (a) all returned or unearned premiums, (b) all additional cash contributions or collateral amounts assessed by the insurance companies in relation to the financed policies and financed by LENDER hereunder, (c) any credits generated by the financed policies, (d) dividend payments, and (e) loss payments which reduce unearned premiums (collectively, the "Financed Policies"). If any circumstances exist in which premiums related to any Financed Policy could become fully earned in the event of loss, LENDER shall be named a loss-payee with respect to such policy.

**2. FINANCE CHARGE.** The finance charge begins accruing on the earliest effective date of the Financed Polices. The finance charge is computed using a 365-day calendar year.

**3. LATE PAYMENT.** For commercial loans, a late charge will be assessed on any installment at least 5 days in default, and the late charge will equal 5% of the delinquent installment or the maximum late charge permitted by law, whichever is less. For personal loans, a late charge will be assessed on any installment 10 days in default, and the late charge will be the lesser of $10 or 5% of the delinquent installment.

**4. PREPAYMENT.** If Insured prepays the loan in full, Insured is entitled to a refund of the unearned finance charge computed according to the Rule of 78s.

**SCHEDULE OF POLICIES**

| Policy Number | Full Name of Insurance Company and Name of General Agent or Company Office to Which Premium is Paid | Coverage | Policy Term | Effective Date | Premiums, Taxes and Fees |
|---|---|---|---|---|---|
| TBD | C00208-MAXUM INDEMNITY COMPANY<br>G03719-RT Chicago<br>[ME:25.000 %, CX:0] [AU, PR] A/F [22,107.29] | GL | 12 | 9/5/2026<br>ERN TXS/FEES<br>FIN TXS/FEES | 28,563.00<br>1,160.00<br>913.39 |
| TBD | C00089-SCOTTSDALE INSURANCE COMPANY<br>G03719-RT Chicago<br>[ME:25.000 %, CX:0] [PR] A/F [5,030.02] | EXLB | 12 | 9/5/2026<br>ERN TXS/FEES<br>FIN TXS/FEES | 6,500.00<br>1,000.00<br>206.70 |
| (Policies continued on next page.) | | | | TOTAL | 163,248.79 |

Q# 102101334, PRN: 083126, CFG: Stetson-MGR, RT: STETSON - AGENT - 7, DD: 0, BM: Invoice, Qtd For: A36441 Original, Memo 2

**5. PROMISE TO PAY.** In consideration of the premium payment by LENDER to the insurance companies listed in the Schedule of Policies (or their authorized representative) or the Agent or Broker listed above, Insured unconditionally promises to pay LENDER, the Amount Financed plus interest and other charges permitted under this Agreement, including the Down Payment if owed and payable directly to LENDER, subject to all the provisions of this Agreement.

**6. POWER OF ATTORNEY.** INSURED IRREVOCABLY APPOINTS LENDER AS ITS "ATTORNEY-IN-FACT" with full power of substitution and full authority, in the event of default under this Agreement, to (a) cancel the Financed Policies in accordance with the provisions contained herein, (b) receive all sums assigned to LENDER, and (c) execute and deliver on behalf of Insured all documents relating to the Financed Policies in furtherance of this Agreement. This right to cancel will terminate only after all of Insured's indebtedness under this Agreement is paid in full. Insured is responsible for repayment of the Amount Financed plus interest and other charges permitted under this Agreement, including the Down Payment if owed and payable directly to LENDER, irrespective of whether LENDER exercises this right to cancel the Financed Policies.

**7. SIGNATURE & ACKNOWLEDGEMENT.** Insured has received, reviewed, and signed a copy of this Agreement. By signing below, you certify that you have the requisite authority to (a) enter into this Agreement on behalf of Insured (if applicable, including as agent, trustee, executor, or otherwise in a representative capacity) and any other insureds named on the Financed Policies, and (b) jointly and severally agree on behalf of all insureds named on the Financed Policies to all provisions set forth in this Agreement. **Insured acknowledges and understands that entry into this financing arrangement is not required as a condition for obtaining insurance coverage.**

**NOTICE TO INSURED: (1) Do not sign this Agreement before you read both pages of it, or if it contains any blank space. (2) You are entitled to a completely filled-in copy of this Agreement. (3) You have the right to prepay the loan in full and receive a refund of any unearned finance charge. (4) Keep a copy of this Agreement to protect your legal rights. (5) See last page of Agreement for your consent to electronic statement and notice delivery.**

Signature of Insured or Authorized Agent ______ Date ______ Signature of Agent ______ Date ______

**ADDITIONAL PROVISIONS OF PREMIUM FINANCE AGREEMENT**

**8. APPLICATION OF PAYMENTS.** (a) Payments received by LENDER from Insured shall be applied first to installments, then to any unpaid fees. The payment of installments is prioritized over the payment of fees, which means when LENDER receives partial payments or overpayments of any installment(s), amounts previously applied to fees may be reallocated to enable a full installment(s) to be paid. This payment application method may cause fees to reappear as unpaid and owing after the payment period in which the fees were originally assessed and paid, but does not increase or otherwise change the amount of fees that Insured may be required to pay under this Agreement. (b) Any returned premium received by LENDER from the Financed Policies will be applied to reduce the total unpaid balance under this Agreement, which shall not relieve Insured of its obligation to pay any remaining installments due but may reduce the amount of such installments.

**9. EFFECTIVE DATE.** This Agreement will not become effective until it is accepted in writing by LENDER. LENDER will send a Notice of Acceptance to Insured to confirm this Agreement is effective.

**10. DEFAULT/CANCELLATION.** Insured is in default under this Agreement if (a) the Down Payment, if to be collected by LENDER, or any payment is not received by LENDER when it is due, (b) a proceeding in bankruptcy, receivership, insolvency or similar proceeding is instituted by or against Insured, or (c) Insured fails to comply with any of the terms of this Agreement. If Insured is in default, LENDER has no further obligation under this Agreement to pay premiums on Insured's behalf, and LENDER may pursue any of the remedies provided in this Agreement or by law. If a default by Insured results in a cancellation of the Financed Policies, Insured agrees to pay a cancellation charge for commercial loans, which will be the maximum permitted by law. No cancellation charge shall apply to personal loans. If cancellation or default occurs, Insured agrees to pay interest on the unpaid balance due at the contract rate until the balance is paid in full.

**11. LIMITATION OF LIABILITY. Insured understands and agrees that LENDER or its assignee is not liable for any losses or damages to Insured or any person or entity upon the exercise of LENDER's right of cancellation, except in the event of willful or intentional misconduct by LENDER.**

**12. INSUFFICIENT FUNDS CHARGE.** If Insured’s payment is dishonored for any reason and if permitted by law, Insured will pay LENDER an insufficient funds charge equal to the maximum fee permitted by law for commercial loans and $10 for personal loans.

**13. LENDER'S RIGHTS AFTER THE POLICIES ARE CANCELLED.** After any Financed Policy is cancelled by any party or if a credit is otherwise generated, LENDER has the right to receive all unearned premiums and other funds assigned to LENDER as security herein and to apply them to Insured's unpaid balance under this Agreement or any other agreement between Insured and LENDER. Receipt of unearned premiums does not constitute payment of installments to LENDER, in full or in part. Any amounts received by LENDER after cancellation of the Financed Policies will be credited to the balance due with any excess paid to the Insured; the minimum refund is $1.00. Any deficiency shall be immediately paid by Insured to LENDER. Insured agrees that insurance companies may rely exclusively on LENDER’s representations about the Financed Policies.

**14. ASSIGNMENT.** Insured may not assign any Financed Policy or this Agreement without LENDER's prior written consent. LENDER may transfer its rights under this Agreement without the consent of Insured.

**15. AGENT OR BROKER.** Insured agrees that the Agent or Broker issuing the Financed Policies or through whom the Financed Policies were issued is not the agent of LENDER, except for any action taken on behalf of LENDER with the express authority of LENDER, and LENDER is not bound by anything the Agent or Broker represents to Insured, orally or in writing, that is not contained in this Agreement. The Agent or Broker will receive from LENDER 1.06 % of the Amount Financed stated on page 1 for aiding in the administration of this Agreement relating to the Financed Policies. In NY, the Agent or Broker may assess a fee to Insured for obtaining and servicing the Financed Policies pursuant to NY CLS Ins § 2119. Any questions regarding this payment should be directed to the Agent or Broker.

**16. COLLECTION COSTS.** Insured agrees to pay reasonable attorney fees, court costs, and other collection costs to LENDER to the extent permitted by law if this Agreement is referred to an attorney or collection agent who is not a salaried employee of LENDER to collect money that Insured owes.

**17. GOVERNING LAW.** The loan terms subject to this Agreement are governed by applicable federal law and Illinois law (to the extent not preempted by federal law), without regard to principles of conflicts of law or choice of law. If any court finds any term herein to be invalid, such finding will not affect the remaining provisions.

**18. WARRANTY OF ACCURACY.** Insured represents and warrants that to the best of its knowledge: (a) the Financed Policies are in full force and effect and that the Insured has not and will not assign any interest in the Financed Policies except for the interest of mortgagees and loss payees, (b) the Down Payment and any past due payments have been paid in full to the Agent or Broker or Lender in cash or other immediately available funds, (c) all information provided herein or in connection with the Agreement is true, correct, and not misleading, (d) Insured is not insolvent nor presently involved in any insolvency proceeding, (e) Insured has no indebtedness to the insurance companies issuing the Financed Policies, (f) there is no provision in the Financed Policies that would require LENDER to notify or obtain consent from any other party to effect cancellation of the Financed Policies, and (g) Insured has disclosed if he or she is a covered member of the armed forces or a dependent of a covered member as defined in the Military Lending Act.

**19. ADDITIONAL PREMIUMS.** (a) Insured expressly agrees to (i) fully and timely comply with all audits by the insurance companies issuing the Financed Policies, (ii) timely provide complete and accurate payroll information, if applicable, and (iii) pay to the insurance companies any additional amount due in connection with the Financed Policies. The Amount Financed shall be applied to the Financed Policies' premium amounts and Insured shall be responsible for any additional premiums or other sums. (b) Insured, or Agent or Broker, may request that LENDER finance additional policies and/or additional premiums (the "Additional Premiums") for Insured during the term of this Agreement. If LENDER agrees, LENDER will send a Notice of Acceptance to Insured to confirm its approval to finance the Additional Premiums. For commercial loans, this Agreement shall be deemed amended on the date of the Notice of Acceptance to consolidate the Additional Premiums with Financed Policies into a single and indivisible loan transaction subject to this Agreement (with applicable changes to the payment schedule), and the Additional Premiums shall be "Financed Policies" on the date of the Notice of Acceptance. For personal loans, LENDER (or Agent or Broker on LENDER's behalf) will provide a separate Premium Finance Agreement to Insured for any Additional Premiums.

**20. CORRECTIONS.** LENDER may insert the names of insurance companies or policy numbers in the Schedule of Policies, if this information is not known at the time Insured signs this Agreement. LENDER is authorized to correct patent errors or omissions in this Agreement.

**21. NON-WAIVER.** Not Applicable.

**AGENT OR BROKER REPRESENTATIONS AND WARRANTIES**

Unless previously disclosed in writing to LENDER or specified in the Schedule of Policies, the Agent or Broker executing this Agreement expressly represents, warrants, and agrees as follows: (1) Insured has received a copy of this Agreement and has authorized this transaction, the signer of this Agreement (whether Insured or its agent) has valid authority to bind Insured and any other insureds named under the Financed Policies to the terms of this Agreement, including the Power of Attorney provision, Insured’s signature is genuine, and the Down Payment has been received from Insured (unless the Down Payment was made to Lender), (2) the information contained in the Schedule of Policies including the premium amount is correct and accurately reflects the necessary coverage, (3) the Financed Policies (a) are in full force and effect, (b) are cancellable by Insured or LENDER (or its successors or assigns), (c) will generate unearned premiums which will be computed on the standard short rate or pro rata basis, and (d) do not contain any provisions which affect the standard short rate or pro rata premium computation, including but not limited to direct company bill, audit, reporting form, retrospective rating, or minimum or fully earned premium, (4) the Agent or Broker is either the insurer’s authorized policy issuing agent or the broker placing the coverage directly with the insurer, except where the name of the Issuing Agent or General Agent is listed in the Schedule of Policies, (5) to the best of the Agent or Broker’s knowledge, there are no bankruptcy, receivership, or insolvency proceedings affecting Insured, (6) Agent or Broker will hold harmless and indemnify LENDER and its successors and assigns against any loss or expense (including attorney’s fees, court costs, and other costs) incurred by LENDER and resulting from Agent or Broker’s violations of these Representations and Warranties or from Agent or Broker’s errors, omissions, or inaccuracies in preparing this Agreement, and will promptly reimburse LENDER for any loss or expense incurred in connection with any incidence of fraud or lack of valid authority on behalf of Insured or any other named insureds with respect to the terms of this transaction, the Agreement, or the Financed Policies, (7) Agent or Broker will (a) hold in trust for LENDER any payments made or credited to Insured through or to Agent or Broker by the insurance companies or LENDER, and (b) pay these monies and the unearned commissions to LENDER upon demand to satisfy the outstanding indebtedness under this Agreement, and (8) to fully and timely assist with all payroll audits.

SCHEDULE OF POLICIES

Insured: Romanov Group LLC - DIP
Quote #: 102101334

| Policy Number | Full Name of Insurance Company and Name of General Agent or Company Office to Which Premium is Paid | Coverage | Policy Term | Effective Date | Premiums, Taxes and Fees |
|---|---|---|---|---|---|
| TBD | C00192-HOMELAND INS CO OF NY<br>G03719-RT Chicago<br>[ME:25.000 %, CX:0] [PR] A/F [23,215.50] | PROP | 12 | 9/5/2026<br>ERN TXS/FEES<br>FIN TXS/FEES | 30,000.00<br>1,000.00<br>954.00 |
| TBD | C00067-LEXINGTON INSURANCE COMPANY<br>G03719-RT Chicago<br>[ME:25.000 %, CX:0] [PR] A/F [58,074.52] | PROP | 12 | 9/5/2026<br>ERN TXS/FEES<br>FIN TXS/FEES | 75,000.00<br>2,500.00<br>2,432.70 |
| TBD | C00060-StarStone National Insurance Company<br>G03719-RT Chicago<br>[ME:25.000 %, CX:0] [PR] A/F [9,014.26] | EXLB | 12 | 9/5/2026<br>ERN TXS/FEES<br>FIN TXS/FEES | 12,019.00<br>1,000.00<br>0.00 |

FIRST INSURANCE FUNDING
A WINTRUST COMPANY

450 Skokie Blvd, Ste 1000
Northbrook, IL 60062-7917
Phone: (800) 837-3707 Fax: (800) 837-3709

## FIRST Insurance Funding Agreement: ACH Authorization for Direct Debit

This Agreement governs ACH transactions initiated by FIRST Insurance Funding, A Division of Lake Forest Bank & Trust Company, N.A. ("FIRST") to credit or charge the Company indicated below. Both parties agree to be bound by NACHA Operating Rules as they pertain to all ACH transactions initiated by FIRST that credit or debit the Company's bank account listed below, and acknowledge that the origination of ACH transactions to the listed account must comply with provisions of U.S. law.

This Agreement provides authorization for recurring ACH Debit transactions to be initiated by FIRST. This Agreement will remain in effect until Company cancels it in writing. Both parties agree that this Agreement constitutes authorization to debit Company's bank account, and Company agrees not to dispute any debits with its bank provided the transaction(s) correspond to the terms indicated in this Agreement and any respective premium finance agreement(s) ("PFA(s)").

**Customer Information:**

Quote #: 102101334
FIRST Account #:
Company Name: Romanov Group LLC - DIP
Street Address: 18180 Yorba Linda Blvd
City, State, Zip Code: Yorba Linda, California 92886-3901
Contact:
Phone Number:
Email Address:

**Bank Information:**

Name on Bank Account: ____________________
Bank Name: ____________________
Bank Account #: ____________________
Bank Routing #: ____________________
Bank City/State: ____________________
Account Type: ____________________ (Checking or Savings)

**I Authorize FIRST to initiate ACH Debits and Credits to the bank account indicated above, provided each transaction is initiated according to the terms of this Agreement or any other PFA(s) I may have with FIRST to debit the amount(s) currently due, including any late fees, other charges, or payment shortages.**

SIGNATURE ____________________ DATE ____________________
NAME ____________________ TITLE ____________________

I certify that I am an authorized representative of the Company indicated above and that I have the authority to enter into this Agreement on the Company's behalf. Company understands that this authorization will remain in effect until it is canceled in writing, and agrees to notify FIRST in writing at least 15 days in advance of any changes in its account information or termination of this authorization. Company understands that this authorization applies to the FIRST Account # listed above and subsequent FIRST Account #s. Company understands that because these are electronic transactions, it will have limited time to report and dispute errors. In the case of an ACH Transaction being rejected for Non Sufficient Funds (NSF) Company understands that FIRST may at its discretion attempt to process the charge again within 30 days, and agrees to an additional NSF charge, as allowed by applicable law, for each attempt returned NSF. Company has certified that the above business bank account is enabled for ACH transactions, and agrees to reimburse FIRST for all penalties and fees incurred as a result of Company's bank rejecting ACH debits or credits as a result of the account not being properly configured for ACH transactions. Company acknowledges that the origination of ACH transactions to its account must comply with the provisions of U.S. law.

PLEASE FAX THIS FORM TO (847) 509-7105 OR EMAIL TO CONTROLLER@FIRSTINSURANCEFUNDING.COM

ACHDEBIT0418

# EXHIBIT 5

**RAINES FELDMAN LITTRELL LLP**
Kyra E. Andrassy (State Bar No. 207959)
*kandrassy@raineslaw.com*
Robert S. Marticello (State Bar No. 244256)
*rmarticello@raineslaw.com*
Stephen M. Mott (State Bar No. 362642)
*smott@raineslaw.com*
4675 MacArthur Court, Suite 1550
Newport Beach, CA 92660
Telephone: (310) 440-4100
Facsimile: (310) 691-1943

Counsel for Debtor-in-Possession
Romanov Group, LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

In re:

ROMANOV GROUP, LLC,

Debtor-in-Possession.

Case No.: 8:26-bk-11948-SC

Chapter: 11

**ORDER GRANTING MOTION PURSUANT TO 11 U.S.C. § 364(b) TO ENTER INTO PREMIUM FINANCE AGREEMENT WITH FIRST INSURANCE FUNDING, A DIVISION OF LAKE FOREST BANK & TRUST COMPANY, N.A.**

Hearing Information:
Date: ___, 2026
Time: 1:30 p.m.
Ctrm: 5C

At the above date and time, the Court held a hearing on the *Motion Pursuant to 11 U.S.C. § 364(b) to Enter Into Premium Finance Agreement with First Insurance Funding, a Division of Lake Forest Bank & Trust Company, N.A.* filed by Romanov Group, LLC, the debtor in possession (the "**Debtor**") in this case. Appearances were as noted on the record. For the reasons set forth in the Motion and on the record,

**IT IS ORDERED AS FOLLOWS:**

1. The Motion is granted;

2. Pursuant to Section 364(c)(2) of the Code, the Debtor is authorized to enter into the Finance Agreement, in the form attached to the Motion as Exhibit 4, and the terms of the Finance Agreement are approved. The Debtor is authorized and directed to timely make all payments under the Finance Agreement, and FIRST is authorized to receive and apply such payments to the Indebtedness as provided in the Finance Agreement;

3. FIRST (or its successor or assigns) is granted a first-priority lien and security interest in the Finance Agreement Collateral and any additional premium required thereunder, including all returned premiums and unearned premiums and all other collateral defined in the Finance Agreement. Without limitation, FIRST's liens, security interests and rights relating to the Finance Agreement Collateral granted: (i) are senior to (a) the liens of any lender providing DIP or cash collateral financing in these cases, and (b) to any claims under 11 U.S.C. §§ 503, 506(c) or 507(b); and (ii) shall not be subject to avoidance, priming or surcharge;

4. If additional premiums become due to insurance companies under the Policies in the Finance Agreement, the Debtor and FIRST (or its successor or assigns) are authorized to modify the Finance Agreement as necessary to pay additional premiums, without the necessity of further hearing or order of the Court;

5. FIRST is irrevocably appointed as attorney-in-fact in the event of default under the Finance Agreement. If the Debtor does not timely make payments when due or are otherwise in default under the terms of the Finance Agreement, the stay of Section 362(a) shall automatically lift (without further order of the Court) to enable FIRST and/or third parties, including insurance companies providing coverage under the Financed Policies, to take all steps necessary and appropriate to: (i) cancel the Financed Policies; (ii) collect, recover, or return the Finance Agreement Collateral to FIRST; (iii) apply the Finance Agreement Collateral to the Indebtedness; and (iv) take other remedial actions consistent with the terms of the Finance Agreement and applicable non-bankruptcy law. FIRST and/or third parties, including insurance companies providing coverage under the Financed Policies,

exercising such rights shall comply with the notice provisions and other provisions of the Finance Agreement;

6. The Finance Agreement and the liens and security interests in the Finance Agreement Collateral granted to FIRST shall continue in full force and effect and the Indebtedness under the Finance Agreement shall remain owing notwithstanding: (i) the dismissal and/or conversion of the Debtor's case; (ii) the discharge of the Debtor; or (iii) the confirmation of a plan of reorganization or liquidation in the Debtor's case. FIRST is extending credit in good faith and is entitled to the protections of Section 364(e) of the Code;

7. If any Indebtedness remains unpaid after application of the Finance Agreement Collateral, following an event of a default or otherwise, such unpaid amount shall be treated as an administrative expense claim pursuant to Section 503(b)(1) of the Code in the Debtor's case;

8. If there are excess returned premiums, unearned premiums, or other Finance Agreement Collateral after application of the Finance Agreement Collateral to the Indebtedness, following an event of default or otherwise, the excess shall be turned over to the Debtor or any trustee subsequently appointed (under Chapter 7 or 11) for the Debtor;

9. If any insurance company needs to perform an audit on any of the Financed Policies, the Debtor and/or any trustee subsequently appointed (under Chapter 7 or 11) for the Debtor, shall cooperate therewith; and

10. The terms of the Order will be immediately effective and enforceable upon entry and that the Court shall retain jurisdiction with respect to any matters related to the implementation of this Order.

###

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
4675 MacArthur Court, Suite 1550, Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled (*specify*): **MOTION PURSUANT TO 11 U.S.C. § 364(b) TO ENTER INTO PREMIUM FINANCE AGREEMENT WITH FIRST INSURANCE FUNDING, A DIVISION OF LAKE FOREST BANK & TRUST COMPANY, N.A.; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF DAVID GOODRICH IN SUPPORT THEREOF**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **September 8, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **September 8, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Scott C. Clarkson
U.S. Bankruptcy Court
Ronald Reagan Federal Building
411 West Fourth Street, Suite 5130
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 8, 2026 | Connie-Marie Santiago | /s/ Connie-Marie Santiago |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **Kyra E Andrassy** kandrassy@raineslaw.com, bclark@raineslaw.com;csantiago@raineslaw.com
- **Jessica L Bagdanov** jbagdanov@bg.law, ecf@bg.law
- **David B Golubchik** dbg@lnbyg.com, dbg@lnbyg.com
- **Steven T Gubner** sgubner@bg.law, ecf@bg.law
- **Ira David Kharasch** ikharasch@pszjlaw.com
- **Kenneth Misken** Kenneth.M.Misken@usdoj.gov
- **Stephen M. Mott** smott@raineslaw.com, csantiago@raineslaw.com;bclark@raineslaw.com
- **Michael S Myers** myersm@ballardspahr.com, BKTDocket_West@ballardspahr.com;phxlsateam@ballardspahr.com
- **David M Poitras** dpoitras@bg.law
- **Joseph M Rothberg** jmr@lnbyg.com, jmr.LNBYG@ecf.inforuptcy.com
- **Stacy H Rubin** rubins@ballardspahr.com, DocketClerk_LasVegas@ballardspahr.com;LitDocket_West@ballardspahr.com
- **Jessica M. Simon** jsimon@hrhlaw.com, mgranzow@hrhlaw.com
- **United States Trustee (SA)** ustpregion16.sa.ecf@usdoj.gov
- **Christopher A Ward** cward@lowenstein.com, lsuprum@lowenstein.com